**In re TABLE TALK, INC., Debtor.**

**Bankruptcy No. 4–82–00253–G.**

United States Bankruptcy Court,
D. Massachusetts.

Oct. 21, 1985.

Timothy Lindamood, Sullivan & Worcester, Boston, Mass., for Trustee.

John P. Sigel, Hale & Dorr, Boston, Mass., for Chase.

James Queenan, Bowditch & Dewey, Worcester, Mass., for Cocaine.

Steven A. Kressler, Kressler, Kressler & Pitnof, Worcester, Mass., for Fox.

## MEMORANDUM AND ORDER RE:

## PROPOSED SALE OF PREMISES AND TRADEMARKS

### PROCEDURAL BACKGROUND

PAUL W. GLENNON, Bankruptcy Judge.

This matter comes before the Court upon the Chapter 7 Trustee's (the "Trustee") Notice of Proposed Sale, Other Than in the Ordinary Course of Business, Free and Clear of Liens and Encumbrances, dated September 5, 1985 (the "Notice of Sale"), and the objections thereto filed by Mr. Ronald A. Chase ("Chase") on September 27, 1985 and Michael Fox Auctioneers, Inc. ("Fox") on September 30, 1985.

Table Talk, Inc. ("Table Talk" or the "Debtor") filed a Petition for Reorganization under Chapter 11 of the Bankruptcy Code on April 5, 1982. The Debtor ceased operations on June 4, 1984 and has not operated since that time. Robert Cataldo was appointed Interim Trustee when the Debtor's Chapter 11 case was converted to a case under Chapter 7 on August 10, 1984.

On September 3, 1985, the Trustee entered into an Agreement of Purchase and Sale (the "Sale Agreement") with the Christos Cocaine Partnership ("Cocaine"). The Sale Agreement provided for the sale of real property of the Debtor located at 153 Green Street, Worcester, Massachu-

setts (the "Premises") together with the trademarks and tradenames of the Debtor's estate (the "Trademarks") free and clear of all liens and encumbrances for an aggregate purchase price of $800,000. Notably, the Sale Agreement granted Cocaine a right of first refusal.[1]

Prior to the Sale Agreement, Fox and the Trustee executed a letter agreement dated July 26, 1985 (the "Auction Agreement") wherein the Trustee agreed to sell and Fox agreed to buy "all tangible personal property of the Debtor's estate (excluding tradenames and trademarks, all other intangible personal property, books and records"). The Auction Agreement, under which Fox now claims a right to auction the Premises and Trademarks on behalf of the Debtor's estate for a commission, was approved by this Court by order entered August 27, 1985.[2]

On September 4, 1985, the Trustee filed a Motion for Limitation of Notice of and for Fixing of Time for Filing Objections to Proposed Sale of Property, Other Than in the Ordinary Course of Business, Free and Clear of Liens and Encumbrances (the "Motion for Limitation"), pursuant to section 363 of the Bankruptcy Code. On September 5, 1985 the Court entered the requested order, requiring that any overbid of a third party be filed and served no later than September 27, 1985 at 5:00 p.m. and fixing October 1, 1985 at 10:00 a.m. as a time of hearing in the event a timely overbid was made.

The Trustee then gave Notice of Proposed Sale, Other Than in the Ordinary Course of Business, Free and Clear of Liens and Encumbrances in accordance with section 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and the Order of this Court. Consistent with the Court's order of September 5, 1985, the Notice of Sale recited that any objection to the proposed sale of the Premises and Trademarks to Cocaine for $800,000 be in writing and be filed with the Court and served upon the Trustee's counsel no later than September 27, 1985 at 5:00 p.m. The Notice of Sale also required that any objection must specify the grounds therefore and that, if the basis of the objection was that the objecting party desired to purchase the Premises and Trademarks for greater value, the objecting party must set forth a competing bid of at least $825,000 and be prepared to pay a deposit of $25,000 at the hearing to be held on the objection.

The Notice of Sale does not specifically mention the right of first refusal in the Sales Agreement between Cocaine and the Trustee. Rather, it provides:

> The proposed sale of the Premises and Trademarks will be effected by the Interim Trustee pursuant to the terms and conditions of a Purchase and Sales Agreement, dated as of September 3, 1985, between the Interim Trustee and the Buyer (the "Agreement"). A copy of

---

**1.** Paragraph F of the Sale Agreement provides:
The Seller hereby agrees that, in the event a person shall object to this agreement and the aforesaid Court approval on the basis of an offer by such person to purchase the premises and the Trademarks for an aggregate purchase price in excess of $800,000.00, the Seller shall not sell the premises and Trademarks to such person unless the Seller shall have first given the Buyer reasonable notice of such offer, in writing, by telephone or otherwise, and an opportunity to purchase the premises and Trademarks on the same terms and conditions offered by such other person and the Buyer shall have declined to exercise its right to purchase the premises and Trademarks on such terms and conditions. The Buyer shall be deemed to have declined to exercise such right in the absence of any notice in writing of the exercise of

such right actually received by the Seller prior to the date of any hearing on such objection or the oral exercise thereof by the Buyer at such hearing.

**2.** Paragraph 7(b) of the Auction Agreement provides in relevant part:
In connection with such auction, if held pursuant hereto, I agree that you may offer for sale at such auction the Premises and the tradenames and trademarks (collectively "Trademarks") of the Debtor's estate to the highest responsible bidder making a bid satisfactory to me in my sole descretion [sic].... At present, I estimate that the minimum bids which maybe considered to be acceptable are $800,000 for the Premises and $50,000 for the Trademarks, but nothing herein shall foreclose me from rejecting bids for these or higher amounts.

the Agreement is available upon request to counsel for the Interim Trustee....

The Notice of Sale, like the Court's order of September 5, 1985, does not refer to a procedure to be followed should the Buyer exercise its right of first refusal with respect to an overbid.

On September 27, 1985, Hurricane Gloria disrupted business and judicial proceedings in New England. The Bankruptcy Court in Worcester closed at 10:00 a.m.

Anticipating problems caused by the hurricane, Chase, through his counsel John D. Sigel, Esquire, advised the Trustee's counsel prior to September 27, 1985, of his intent to file an objection to the Notice of Sale. On September 27, 1985, upon the advice of the Clerk of the Bankruptcy Court in Worcester, Chase filed his objection with the Clerk's Office in Boston, Massachusetts and served a copy of the same on the Trustee's counsel that same day. Chase confirmed his objection with this Court by filing a copy in Worcester on September 30, 1985.

At 2:51 p.m. on September 30, 1985, Fox filed an objection to the Notice of Sale. The ground for its objection was the Auction Agreement. Fox paid $350,000 for the personal property, allegedly subject to the right to sell the remaining assets at public auction for a commission. In its objection Fox averred that its commission would be significantly diminished unless it could auction the Premises and Trademarks as well as the personalty.

Unlike Chase, Fox made no attempt to contact the Trustee or his Counsel prior to the hearing noticed and scheduled for October 1, 1985. Furthermore, neither Fox nor his counsel attended the October 1, 1985 hearing. On October 3, 1985, Fox filed a Motion for Rehearing of its objection to the proposed sale, which Motion was denied by this Court on October 9, 1985. In its Motion for Rehearing, Counsel for Fox asserted that failure to attend the October 1, 1985 hearing was due to clerical error.

Pursuant to the Notice of Sale, a hearing was held on October 1, 1985 regarding the objections of Chase and Fox. Chase and Cocaine and their counsel were present at the hearing as well as the Trustee and his counsel. Chase's objection specified a counterbid of $850,000 for the Premises and Trademarks. At the hearing, Chase through his counsel, indicated he was prepared to pay the requested deposit of $25,000.

In accordance with the right of first refusal contained in the Sale Agreement, the Trustee offered to sell the Premises and Trademarks to Cocaine for $850,000. At the hearing, Cocaine accepted this offer in open Court. Counsel for Chase then requested the Court to entertain bids above $850,000.

Chase argued that any right of first refusal held by Cocaine was ineffective because it had neither been approved by the Court nor disclosed in the Notice of Sale. Cocaine argued that the reference to the Sale Agreement in the Notice of Sale was sufficient to alert potential overbidders to the possibility of a right of first refusal. Counsel for Cocaine also asserted that any need for bidding ended when Cocaine matched Chase's offer.

Cocaine's counsel offered evidence concerning Cocaine's negotiations with the Trustee. Anthony J. Stevens, one of the Cocaine partners, testified that Cocaine's negotiating strategy would have been entirely different absent the right of first refusal. Stevens testified that if the prospect of further bidding in excess of the amount of an overbid had been contemplated Cocaine would not have quickly increased its original offer of $675,000 to $800,000 during negotiations.

Stevens also outlined Cocaine's plans for operating a bakery business on the Premises and employing former personnel of the Debtor. In addition, he alluded to discussions with Fox about Cocaine's purchase of the personalty scheduled for Auction on October 23, 1985.[3]

---

3. In his testimony, Stevens indicated he believed the auction was scheduled for October 19, 1985.

At the hearing, both the Trustee and his counsel recommended to the Court that Cocaine's bid in the amount of $850,000 be accepted. Counsel for the Trustee also had the Trustee testify with respect to the Auction Agreement.

At the conclusion of the hearing, the Court took the objections of Chase and Fox under advisement and allowed ten days for counsel to submit memoranda in support of the positions of their clients. On October 11, 1985, counsel for Chase and Cocaine duly filed memoranda. Counsel for the Trustee did not submit a memorandum.

Following the Court's denial of its Motion for Rehearing, on October 15, 1985, Fox commenced an adversary proceeding in this Court against the Trustee. On the same day, this Court received a letter from the Trustee's counsel informing it of the Trustee's desire to 1) establish a bidding procedure open to all interested parties; and 2) give Fox the opportunity to rescind the Auction Agreement. The Trustee's reasons for these proposals are the magnitude of the City of Worcester's claim for assessed and unpaid real estate taxes (i.e., $558,218.92 based on a $1,845,000 valuation of the premises) and the ostensible doubt cast on the Sale of the Premises by the pleadings in this case. In short, the Trustee has reversed the position he took at the October 1, 1985 hearing, arguing now that:

> Foreclosure of further bidding by the Court as requested by Cocaine may thus have two effects adverse to the creditors of the estate: first, it may result in the Sale of the Premises and Trademarks for less than their realizable value, and, second, it may prejudice the Trustee's case against Worcester.[4]

### DISCUSSION

There are three possible dispositions of this case. First the Court may authorize the Trustee to sell the property to Cocaine for $850,000. Second, the Court may authorize the Trustee to open bidding between Cocaine and Chase at $850,000. Third, the Court may authorize the Trustee to conduct a new bidding procedure open to Chase, Cocaine and, perhaps, Fox and others. Four issues must be resolved before .the Court can determine the proper disposition: 1) Whether the objections of Fox and Chase were timely filed; 2) Whether Court approval is necessary for the Trustee to grant a right of first refusal; 3) Whether the Notice of Sale, without a specific reference to the right of first refusal, was sufficient to permit bidding for the Premises and Trademarks subject to that provision; and 4) Whether the Trustee's request for a new bidding procedure should be granted.

### I.

With respect to the first issue, the Court finds that the objection of Chase was timely filed, but that of Fox was not. Clearly, Chase made every effort to comply with the terms of the Court's order of September 5, 1985. Upon the advice of the Worcester Clerk's Office, he filed his objection in the Boston Bankruptcy Court and served it on Trustee's counsel on September 27, 1985. Given the upheaval caused by Hurricane Gloria, there was nothing else he could do. Notably, the Trustee was not prejudiced by Chase's actions and did not contest Chase's right to be heard at the October 1, 1985 hearing.

Unlike Chase, Fox did not provide the Trustee or its counsel with a copy of its objection prior to the hearing noticed and scheduled for October 1, 1985. Furthermore, neither the Trustee nor his counsel was advised by telephone or otherwise that Fox was objecting to the Notice of Sale. Fox filed its objection at 2:15 p.m. on the afternoon of September 30, 1985 and did not attend the October 1, 1985 hearing. If Fox had filed his objection early Monday morning, served a copy on the Trustee's counsel that same day, and attended the hearing scheduled for the next day, the

---

It has been brought to the Court's attention that the auction will commence on October 23, 1985.

4. The Trustee suggests that the bidding procedure be conducted at the Clerk's office of this Court on October 22, 1985 at 10:00 a.m.

Court's decision might be different. However, Fox failed to take any steps to file and serve its objections in a timely manner, and if it did so, such steps were not brought to the Court's attention in Fox's Motion for Rehearing. Thus, the Court finds that only Chase's objection was timely filed and, the merits, if any, of Fox's claim under the Auction Agreement must be determined in the adversary proceeding.

## II

Section 363(b) of the Bankruptcy Code provides the "[t]he Trustee, after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate".

The phrase "after a notice and hearing" is defined in Section 102 of the Bankruptcy Code as follows:

(1) "after notice and a hearing", or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act.

In the case *sub judice*, the Trustee could not enter a binding agreement to transfer the Premises and Trademarks without a hearing because Chase's objection served as request for a hearing.

Chase asserts that the right of first refusal contained in the Sale Agreement is analogous to an option to purchase the Premises and Trademarks at whatever price was first offered by another bidder. Since the grant of an option to purchase constitutes the sale of assets of the estate which can only be accomplished through compliance with Section 363(b), Chase argues that the Trustee could not grant Cocaine a right of first refusal. *Cf. In re Chapin*, 2 B.R. 373 (Bankr.S.D.N.Y.1980). As a consequence, Chase asserts that the right of first refusal is ineffective and may not serve to limit bidding on the Premises and Trademarks.

The Court finds that, although a right of first refusal is analogous to an option contract in some respects, it differs materially in that the optionee of an option contract may compel the owner of property to sell whether or not he is willing to part with ownership. The holder of a right of first refusal, however, merely can require the owner, when and if he decides to sell, to offer the property at the price he is willing to sell to a third party.

Although counsel for Cocaine did not specifically address the issue of whether Court approval is necessary for the Trustee to grant Cocaine a right of first refusal, Cocaine's counsel emphasized the great discretion the Trustee has in negotiating and conducting a sale not in the ordinary course of business. *See* 3 COLLIER BANKRUPTCY PRACTICE GUIDE ¶ 43.-02[3] (1985).

The Court agrees with Cocaine on this issue. The policy of encouraging potential buyers to enter negotiations with trustees would not be served by requiring the trustee to gain Court approval of a right of first refusal, if, as in this proceeding, it was granted in good faith. A contrary position might discourage potential buyers from negotating with trustees, thereby forcing down the market value of the bankruptcy estate property in general. Therefore, the Court finds that the right of first refusal is not ineffective simply because the Trustee did not obtain Court approval for it.

## III

Federal Rule of Bankruptcy Procedure 6004 provides that the notice of sale other than in the ordinary course of business under Section 363(b) shall comply with Bankruptcy Rule 2002(a)(2), (c) and (i). Rule 2002(c)(i) provides:

Proposed Use, Sale, or Lease of Property. Subject to Rule 6004 the notice of a proposed use, sale, or lease of property required by subdivision (a)(2) of this rule shall include the time and place of any public sale, *the terms and conditions of any private sale* and the time fixed for filing objections. The notice of a proposed use, sale, or lease of property, including real estate, is sufficient if it generally describes the property.

(Emphasis Supplied)

■ The question before the Court is whether the terms and conditions of the proposed private sale by the Trustee may be incorporated in the Notice of Sale by reference to the Sale Agreement.

Since the Notice made no mention of the right of first refusal, Chase argues that the October 1, 1985 hearing should have been conducted based on the plain language of the Notice of Sale without being affected by the right of first refusal. According to Chase, the integrity of judicial sales is at stake.

Cocaine agrees with Chase that the integrity of the judicial process is at stake. Noting that the Notice of Sale contained no provision making reference to bidding beyond a third party's bid, Cocaine argues that further bidding at a Court hearing on a private sale can take place only where the notice, and any related Court order on notice specifies that there will be such further bidding.

The absence of provisions referring to bidding beyond a third party's bid together with the language of the Notice of Sale stating the proposed Sale is to be made "pursuant to" the September 3, 1985 Sale Agreement and the invitation to examine the Sale Agreement, compel the Court to find that explicit reference to the right of first refusal was not necessary under the circumstances here. While it would have been preferable to make an explicit reference to the right of first refusal in the Notice of Sale, the Court believes that

where, as here, there are sophisticated businessmen, represented by able counsel, an indirect reference is sufficient.

Cases cited by Chase are not persuasive. The language in *In re August E. Mansker*, Docket No. 4–84–00269–G, Adv.Pro. No. 4–84–0073, (July 9, 1984) to the effect that "[t]he debtor shall alert all creditors and prospective purchasers of [the] right of first refusal" is dicta. That case concerned a contract made between the Debtor and a third party prior to the bankruptcy proceeding. In *In re Alisa Partnership*, 14 B.R. 54 (Bankr.D.Del.1981), the Court was interpreting Section 363(i) of the Bankruptcy Code, which section provides explicit protection for the debtor's spouse or co-owner by way of a right of first refusal. Both cases strongly suggest that an explicit reference to a right of first refusal is advisable, but they do not mandate such an explicit reference.

As a result of the foregoing, the Court concludes that the Notice of Sale sent by the Trustee complied with the requirements of Bankruptcy Rules 6004 and 2002.

## IV

■ With respect to the Trustee's request that a another bidding procedure be approved, the Court finds that such a procedure would be inequitable to Cocaine, an entity that bid the property in good faith,[5] and highly irregular. The Trustee's Motion to Limit which sets forth terms and conditions of the proposed sale was approved by the Court on September 5, 1985. Notice was sent to interested parties consistent therewith. The Trustee's suggestion that a bidding procedure be established ignores the notice requirement of Section 363. Since the new bidding procedure is not entirely consistent with the Notice of Sale mailed on September 6, 1985, in that no minimum bid is specified and Fox and other interested parties are eligible to bid despite their failure to file timely objec-

---

5. The Trustee in his October 15, 1985 letter to the Court concurs that Cocaine "unquestionably entered into the Sale Agreement in good faith".

tions, the Court is concerned about the adequacy of notice to all creditors. The Court also is concerned about potential bidders who may have refrained from bidding on the Premises and Trademarks on the basis of the right of first refusal in the Sale Agreement referenced in the Notice of Sale. The Trustee has not indicated how these individuals will be informed that the right of first refusal provision is no longer applicable. Clearly, notice of the proposed bidding procedure cannot be given to creditors within the time frame contemplated by the Trustee. The Court must add that it is troubled by the Trustee's about face on the issue of the right of first refusal. Adoption of the Trustee's proposal, without giving Cocaine a chance to respond, would be inequitable, particularly in view of the fact that the Trustee did not submit a memoranda on or before October 11, 1985 or apparently advise Cocaine of its change of position before Cocaine submitted its memoranda.

The necessity of maintaining the integrity of the Court's judicial process, even at the expense of bringing less money into the bankruptcy estate was recognized in *In re Gil-Bern Industries, Inc.,* 526 F.2d 627 (1st Cir.1975), a case in which a third party who made an overbid on a proposed private sale complained because he was required to engage in further bidding beyond his initial overbid. The court disapproved any irregular procedure and remanded the case after stating:

> It might not only be thought improper for a bankruptcy court to proceed in an irregular fashion, but in the long run it would be penny wise and pound foolish. Creditors in general would suffer if unpredictability discouraged bidders altogether. At least such a procedure might encourage low formal bids....

526 F.2d at 629.

The Court is not unsympathetic to the Trustee's concern about the claim by the City of Worcester and the high value placed on the Premises by the City. Nevertheless, the Court is not persuaded that the bidding procedure suggested by the Trustee would result in the establishment of the fair market value of the Premises. Indeed, the Trustee has recognized that there is a danger Cocaine might withdraw its offer entirely, leaving Chase facing no competitive bids. The Trustee testified to the difficulty he encountered finding a buyer willing to pay $800,000. The parties also referred to an appraisal of the Premises substantially below $800,000. These factors certainly bear on the fair market value of the Premises and may be used by the Trustee in his objection to the City's claim.

With respect to the Trustee's request that Fox be granted the right to rescind the Auction Agreement, the Court believes that this issue is not properly before the Court and should be handled by a settlement agreement between the Trustee and Fox, in any event. In view of the foregoing, the Court has determined that neither the Trustee's request for a new bidding procedure nor his request for permission for Fox to rescind the Auction Agreement should not be granted.

Counsel for Cocaine introduced evidence that Cocaine intended to use the Premises as a bakery. While this plan has not been ignored by the Court, it has not weighed heavily in the Court's decision. The Court seeks to encourage dealings with Trustee and the efficient and economical sales of assets which ultimately inure to the benefit of debtors' estates.

In consideration of the entire record of this proceeding, the Trustee is authorized to and directed to sell the Premises and Trademarks to Cocaine for $850,000.

SO ORDERED.