# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 98-6088 MN
No. 98-6089 MN
No. 98-6090 MN
No. 98-6091 MN
No. 98-6092 MN
No. 98-6093 MN

---

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| WINTZ COMPANIES, d/b/a | * | APPEALS FROM THE UNITED |
| Milbank Freightways, | * | STATES BANKRUPTCY COURT |
| | * | FOR THE DISTRICT OF |
| Debtor. | * | MINNESOTA |
| | * | |
| GEORGE WINTZ, | * | |
| Appellant, | * | |
| v. | * | |
| | * | |
| AMERICAN FREIGHTWAYS, INC., and | * | Case No. 98-6088MN |
| CHARLES W. RIES, Trustee, | * | |
| | * | |
| Appellee. | * | |
| ----------------------------------------------------- | * | |
| GEORGE WINTZ, | * | |
| Appellant, | * | |
| v. | * | |
| | * | |
| STAN KOCH & SONS TRUCKING, INC. | * | Case No. 98-6089MN |
| and CHARLES W. RIES, Trustee, | * | |
| | * | |
| Appellees. | * | |
| ----------------------------------------------------- | * | |

GEORGE WINTZ,                                    *

                        Appellant,             *

v.                                               *

                                                *

SPINDRIFT, INC. and                              *        Case No. 98-6090MN

CHARLES W. RIES, Trustee,                        *

                                                *

                        Appellees.             *

------------------------------------------------------  *

WINTZ PROPERTIES, INC.,                          *

                                                *

                        Appellant,             *

v.                                               *

                                                *

AMERICAN FREIGHTWAYS, INC., and                  *        Case No. 98-6091MN

CHARLES W. RIES, Trustee,                        *

                                                *

                        Appellees.             *

------------------------------------------------------  *

WINTZ PROPERTIES, INC.,                          *

                                                *

                        Appellant,             *

v.                                               *

                                                *

STAN KOCH & SONS TRUCKING, INC.                  *        Case No. 98-6092MN

and CHARLES W. RIES, Trustee,                    *

                                                *

                        Appellees.             *

------------------------------------------------------  *

WINTZ PROPERTIES, INC.,                          *

                                                *

                        Appellant,             *

v.                                               *

                                                *

SPINDRIFT, INC. and                              *        Case No. 98-6093MN

CHARLES W. RIES, Trustee,                        *

                                                *

                        Appellees.             *

Submitted: February 3, 1999
Filed: March 10, 1999

Before KOGER, Chief Judge, WILLIAM A. HILL, and SCHERMER, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

George Wintz and Wintz Properties, Inc., (collectively "Appellants"), appeal three bankruptcy court[1] orders approving sale by the Trustee, Charles W. Ries ("Trustee"), of the estate's interests in three parcels of real property pursuant to 11 U.S.C. § 363(f). We affirm the orders approving the sale of these properties free and clear of liens and interests, and we hold that without a stay pending appeal, the sales are not reversible under 11 U.S.C. § 363(m). In addition, because the estate already closed on the sale of its interest in one parcel of property, we hold the appeal of that particular sale order is moot.

**Facts**

The Wintz Companies' bankruptcy case commenced on August 15, 1997. At the time of the bankruptcy filing, the estate held fee interests in at least two parcels of real estate. One parcel was known as the "Rosemount Property," consisting of a warehouse and nine-hole golf course. The second was a single parcel of real estate known as the "Walnut Property," consisting of a warehouse. The estate also held an interest as lessee under a long term lease on a truck terminal facility known as the "Terminal Road Property." Between December 1, 1995 and January 1, 1996, Wintz Companies transferred its interests in the three properties to Wintz Properties, another company owned and controlled by George Wintz. Wintz Properties subsequently transferred its interest in the Rosemount Property to Spindrift, Inc., a company owned by an acquaintance of George Wintz.

The Trustee filed a complaint to set aside the transfers of these properties to Wintz Properties, and to others, including Spindrift, Inc., on the basis of actual and constructive

---

[1] The Honorable Gregory F. Kishel, United States Bankruptcy Judge for the District of Minnesota.

3

fraud under Minnesota's Uniform Fraudulent Transfer Act. The bankruptcy court granted partial summary judgment to the Trustee on his avoidance action, setting aside the transfers to Wintz Properties and Spindrift, Inc. and recovering those properties to the estate. The bankruptcy court's decision granting summary judgment in favor of the Trustee is also on appeal before this court and is addressed in a separate opinion.

While proceeding with his avoidance action, the Trustee also solicited offers to purchase the estate's interest in the three properties, and employed a real estate professional to find purchasers for each of the three properties. Following the deadline for receipt of written bids, the Trustee notified the three highest bidders for each property of an opportunity to raise their offers at an auction pursuant to procedures previously outlined by the Trustee. The three highest bidders of the Terminal Road Property advised that they did not wish to increase their original offers. Thus, the Trustee did not conduct an auction of that property. The Trustee did, however, conduct an auction of both the Walnut and Rosemount Properties. As a result of these efforts, the Trustee filed separate motions on July 24, 1998, to approve the proposed sales of the properties to the following successful bidders:

Terminal Road Property - to American Freightways, Inc. for $2,500,010
Walnut Property - to Stan Koch & Sons Trucking, Inc. for $3,000,000
Rosemount Property - to Spindrift, Inc. for $6,025,000.

The sale procedures outlined in each motion and notice of sale contained a provision that granted a "last-look" opportunity to the proposed purchaser under each of the Trustee's motions. This "last-look" opportunity provided that if there was an objection to the sale based upon the inadequacy of the proposed purchase price, the proposed purchaser had the right to match any objector's higher bid. The sale procedures also required any objector to offer a purchase price that was at least $25,000 more than the proposed sale price and required the objector to demonstrate an ability to close.

The Trustee noticed the motions for hearing on August 18, 1998, and continued the motions several times in conjunction with the court's consideration of the Trustee's avoidance action. Ultimately, on September 3, 1998, the court announced it would approve the sale of the Rosemount and Walnut Properties. The bankruptcy court continued the hearing on the motion to sell the Terminal Road Property until September 17, 1998, to allow

the Trustee and the lessors of the Terminal Road Property time to resolve issues regarding the cost of repairs and environmental remediation required for the Trustee to cure defaults under the lease. An agreement quantifying these costs was necessary for the Trustee to assume and assign the lease. In addition to repairs and remediation expenses, the term of the Terminal Road Property lease was in dispute. Although the stated term of the lease was 40 years, the lease recited that it ran from January 1, 1964 to December 31, 2004, which constituted a period of 41 years.

The Trustee and American Freightways, Inc., the proposed purchaser of the Terminal Road Property, reached an agreement on these matters, resulting in a proposed sale of the leasehold for the purchase price of $2,103,135.97. This price reflected a reduction for the shorter lease term of 40 years and an adjustment for a new closing date. The Trustee also reached an agreement with the lessors about what had to be done to cure defaults under the lease. Consequently, the Trustee filed an amended motion and notice to sell the Terminal Road Property for this lower price. The Trustee served this amended motion and notice on all parties in interest, including the other high bidders, on September 4, 1998. The amended motion and notice described the changes to the original purchase agreement, and advised that a hearing would be conducted on the motion on September 17, 1998. The sale procedures in the amended motion and notice were identical to the sale procedures in the original motion, including the "last-look" provision that gave the proposed purchaser the right to match any bid in excess of the proposed purchaser's offer.

George Wintz and Wintz Properties objected to the sales. Despite those objections, by orders dated September 21, 1998, the bankruptcy court approved all three sales. In the orders authorizing sale of each property, the court found that each sale was in the best interest of the debtor, its estate and all creditors; that it was a good faith transaction; and that notice of the sale was adequate and sufficient. Each order also stated that the interests of Wintz Properties and Spindrift (where applicable), in the properties were avoided by the Trustee's fraudulent transfer action. On October 2, 1998, the Trustee and American Freightways, Inc. consummated the sale of the Terminal Road Property with delivery by the Trustee of an executed assignment of lease in exchange for payment by American Freightways, Inc. George Wintz and Wintz Properties filed motions for stay of the orders

5

authorizing sale pending appeal. The bankruptcy court denied the requests for stay pending appeal. Thereafter, the Appellants filed these timely appeals.

## Issues on Appeal

Appellants seek reversal of all three sale orders on the basis that the estate may not have held an interest in the properties at the time of the orders authorizing the sales. Appellants also challenge the sale orders on procedural grounds, asserting that certain defects in the sale processes warrant vacating the sales. First, Appellants question whether the Trustee could sell interests that the Trustee recovered in a fraudulent transfer avoidance action when the avoidance order, itself, is on appeal. Second, Appellants challenge all three sales on the grounds that the "last-look" provision in the sale procedures rendered the sale process flawed by chilling potential purchase offers. Lastly, with respect to the Terminal Road Property only, Appellants contend the order authorizing that sale was defective because changes in the sale terms mandated that the Trustee re-market the property and provide a new 20-day notice period prior to the hearing required by Fed. R. Bankr. P. 2002(a)(2). In opposition, the Trustee asserts that he had the right to sell the estate's interest in the three properties despite an appeal of the favorable judgment on his fraudulent transfer avoidance action. He also maintains that the "last-look" provision was beneficial, not harmful to the estate. With respect to the appeal of the sale of the Terminal Road Property, the Trustee maintains that the sale was properly noticed and that because the sale transaction has already occurred, appeal of that sale is moot under 11 U.S.C. § 363(m). Although the Trustee did not raise a finality argument under 11 U.S.C. § 363(m) with respect to the sale of the Rosemount and Walnut Properties, which had not occurred at the time of the appeal, the court determines that the authority for those sales is not subject to reversal or modification under 11 U.S.C. § 363(m).

## Standard of Review

We consider the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Four B. Corporation v. Food Barn Stores, Inc. (In re Food Barn Stores Inc.), 107 F.3d 558, 562 (8th Cir. 1997). Matters committed to the bankruptcy court's discretion, such as implementing bidding procedures, will be reversed only if the court abused its discretion. See Consumer News and Bus. Channel Partnership v. Financial News

6

Network Inc. (In re Financial News Network Inc.), 980 F.2d 165, 169 (2d Cir. 1992) (bankruptcy judge had broad discretionary power in conducting sale of debtor's assets).  An abuse of discretion occurs if the bankruptcy court fails to apply the proper legal standard or fails to follow proper procedures in making its determination, or if the court bases an award upon findings of fact that are clearly erroneous.  In re Kula, 213 B.R. 729, 735 (B.A.P. 8th Cir. 1997); In re Cresota Mill Ltd. Partnership, 211 B.R. 315, 317 (B.A.P. 8th Cir. 1997). For a finding of fact to be clearly erroneous, this court must be left with a "definite and firm impression that a mistake has been committed."  In re Waugh, 95 F.3d 706, 711 (8th Cir. 1996).

## Discussion

**A.     Points Relevant to All Three Sales.**

**1.     Appeal of avoidance order does not preclude sale of assets -- The sales were authorized under 11 U.S.C. § 363(f) and are final under 11 U.S.C. § 363(m)**

Section 363(f) allows the bankruptcy court to authorize the sale of property free and clear of any interest in such property of an entity other than the estate, only if –

1.     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
2.     such entity consents;
3.     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
4.     such interest is in bona fide dispute; or
5.     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  The Trustee asserted that 11 U.S.C. § § 363(f)(3), (4) and (5) applied with regard to all of the properties.  Although the bankruptcy court orders authorizing the sales do not recite specific findings that satisfy each of these subparagraphs, the orders do state that each sale is authorized as requested in the Trustee's motion; that each sale is in the best interests of the estate; that each sale is a good faith transaction; and that the Trustee gave adequate notice of the proposed entry of the order authorizing each sale.

Other than Appellants' objection that the "last-look" provision in the sale procedures somehow had a chilling effect on bids for the property, (as addressed below), Appellants have alleged no other procedural defects in the conduct of the sales that would render the sales invalid, nor have they raised any objection to the good faith of the purchasers. Instead, Appellants contend that because they have appealed the order avoiding transfers of the properties, the sales should be vacated because it may later be found that the estate did not have an interest in the properties that the Trustee sold.

The Eighth Circuit has stated that a bankruptcy court must carefully consider the requirements of section 363(f) and has the duty to protect the property interests of third parties. Missouri ex rel. Runyan v. United States Bankruptcy Court, 647 F.2d 768, 778 (8th Cir. 1981). Bankruptcy courts are particularly admonished to examine their authority to order a sale under section 363(f) if title documents indicate that the estate possesses no substantial ownership rights or if any bona fide dispute over the property exists between third parties. Id. In the instant case, the record reflects that the bankruptcy court considered the elements of 11 U.S.C. § 363(f)(3), (4) and (5) in determining what liens existed against each property that were entitled to be paid from proceeds of the sales. Further, at the time of sale, the court made its determination that the Trustee held an interest in the subject properties by finding that the debtor's transfer of those properties was fraudulent and that ownership of each property properly rested with the estate.

In Missouri ex rel Runyan, amid the larger issue of the bankruptcy court's jurisdiction over grain stored in debtor's public storage bin, several farmers challenged the propriety of a trustee's sale of such grain on the grounds that the trustee held the grain only as a bailee, and that ownership had not been determined at the time of sale. The bankruptcy court authorized the sale with interests to attach to the sale proceeds, and on appeal, the district court affirmed, finding that the bankruptcy court correctly held that the elements of 11 U.S.C. § 363(f)(4) and (5) were satisfied. On subsequent appeal, (Lindsey v. Ipock, 732 F.2d 619 (8th Cir. 1984)), the Eighth Circuit, relying on the finality principle of section 363 sales, rejected the farmer's assertion that any dispute concerning ownership of the grain rendered the sale invalid. The Eighth Circuit explained, "[The farmer] may not belatedly attack the bankruptcy order of sale in these collateral proceedings; once [the farmer] was

8

apprized of the bankruptcy court's sale order and failed to timely appeal, he was obligated to obey these orders **even if they were in error** . . . "Id. at 621 (emphasis added). "When a [debtor] sells property with the approval of the court, the buyer acquires title clear of all claims in the bankruptcy. The property may not be hauled back into the estate, and the terms of the sale are inviolate in the absence of fraud or collusion." In re Chicago, Rock Island and Pacific R.R. Co., 794 F.2d 1182, 1186 (7th Cir. 1986) (holding that bankruptcy court's jurisdiction lapsed with its control of the property). The finality rule of 11 U.S.C. § 363(m) codifies this concept, and requires a stay pending appeal from a bankruptcy sale.

In the instant case, Appellants failed in their attempt to obtain a stay pending appeal. Without a stay pending appeal, section 363(m) applies squarely and protects the purchasers from the effect of any reversal or modification on appeal of the orders authorizing the sales. Section 363(m) is very explicit about the necessity of obtaining an order for stay pending appeal and about the inability to obtain a reversal or modification of an order approving a sale without obtaining such a stay. That section states:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). The rule is well stated that the finality of 11 U.S.C. § 363(m) renders un-reviewable a sale of estate assets under section 363(b) unless one obtains a stay pending appeal. Veltman v. Whetzal, 93 F.3d 517, 521 (8th Cir. 1996) (citing In re CGI Indus., Inc., 27 F.3d 296, 299 (7th Cir. 1994)). This finality rule is premised upon the two complementary policies of (1) encouraging finality in bankruptcy sales; and (2) respecting the jurisdictional prohibition against allowing the court to decide cases in which it cannot provide a remedy. Id. Courts in the Eighth Circuit have repeatedly stated this principle. See Prasil v. Dietz (In re Prasil), 215 B.R. 582, 584 (B.A.P. 8th Cir. 1998); Forbes v. Forbes (In re Forbes), 215 B.R. 183, 192-193 (B.A.P. 8th Cir. 1998). Because Appellants' motion for stay pending appeal was denied, this court is without authority to reverse or modify the

9

of these properly conducted sales.  Moreover, even if Appellants prevail on their appeal

that, at the time of the sales, the Trustee did not hold an interest in, or own, the properties

to the sale, those sales (of whatever the estate's interest), are nevertheless final and not

appeal.

**2.**

While

§ 363(m) subsumes the procedural points Appellants raise, we address those points briefly.

proposed purchaser the right to match any competing bid, tainted the sales by creating a

for competitive bidding.  The facts of the present case support the bankruptcy court's

the "last-look" provision created an incentive, rather than a disincentive, for bidding.  First, the

conducted an arm's length auction under terms that encouraged competing bids from the

highest bidders for each property.  The Trustee then provided notice of each motion

to approve sale to all parties in interest with an opportunity for any party to object to the

of the sale price.  In the event of an objection to the proposed sale, the Trustee's

procedures provided for further competitive bidding at hearing on approval of the sale.  The

$25,000, and that the proposed purchaser was allowed a  "last-look" or right to match the

Courts have routinely approved such sale procedures, including the "last-look" provision

highest bids at the outset.  In <u>Four</u>                                                                 (<u>In re Food Barn</u>

<u>                 </u>, 107 F.3d 558 (8th Cir. 1997), a Chapter 11 debtor reached an agreement with

B Corporation for assignment of a real property lease.  The assignment and purchase agreement

purchaser, the right to match any rival offers and required competing bidders to reimburse

10

Four B no less than $10,000 for its actual legal and accounting expenses in formulating its initial bid. In <u>Food Barn</u>, the estate originally proposed to assign its interest in a grocery store lease for $1.5 million to Four B, but at the hearing on approval of the sale, a competing bidder offered $1.6 million. Four B agreed to match that offer, but the competitor bid again and offered $2.1 million. Four B ultimately agreed to match the higher bid, but appealed the court's extension of a second bid opportunity to the competitor, asserting that Four B should have been permitted to purchase the lease rights for $1.6 million on the theory that it had an exclusive right of first refusal. Although the propriety of the matching terms was not directly challenged on appeal, in affirming the bankruptcy court's requirement that Four B had to match the second bid, the Eighth Circuit approved the use of matching, or "last-look" provisions in sale contracts. Specifically, the Eighth Circuit stated:

> Some amount of bid protection is, of course, permissible under the Code, and the trustee is not normally required to seek court approval before in good faith entering into an agreement which includes a right of first refusal. <u>See</u> <u>In re Table Talk, Inc.</u>, 53 B.R. 937, 942 (Bankr. D. Mass. 1985). "A contrary position might discourage potential buyers from negot[i]ating with trustees, thereby forcing down the market value of the bankruptcy estate['s] property in general." <u>Id</u>. Still, it would be unwise to allow the parties to hamstring the court's discretion to implement bidding procedures it deems to be fit under the circumstances. The bankruptcy judge must retain the capability to conduct sales in a manner that most benefits the bankruptcy estate, and we would be loath to accept any contractual provisions that purport to limit this authority.

<u>Food Barn Stores, Inc.</u>, 107 F.3d at 567-68.

Similarly, "break up" fees or termination fees payable to a lead bidder involve analogous concepts, and courts permit such fees provided the fees create an incentive for increased bidding in sales from bankruptcy assets. <u>See</u> <u>In re APP Plus, Inc.</u>, 223 B.R. 870, 875 (Bankr. E.D.N.Y. 1998) (authorizing break-up fee and analyzing whether addition of a "topping fee" would similarly "encourage rather than discourage the bidding, and whether it would enhance rather than detract from the ultimate maximum recovery to the estate."); <u>see also</u> <u>In re S.N.A. Nut Company</u>, 186 B.R. 98, 104 (Bankr. N.D. Ill. 1995) (denying break-up fee, but holding "[t]he test is whether the payment of a breakup fee is in the best interest of the estate."). As with matching rights, or "last-look" procedures, the test is

whether the bankruptcy court, in its discretion, properly determines that the proposed fee,

the transaction as a whole, make economic sense and are in the best interest of the

bankruptcy <u>In re America West Airlines, Inc.</u>

(Bankr. D. Ariz. 1994).

In

highest bidders were allowed to attend an initial auction to challenge the bid of the proposed

Because the sale terms disclosed that the successful bidder would have the right

to

to the sale, each interested bidder had an incentive initially to bid the highest amount in

to acquire the "last-look" right.  Thus, the sale procedures created a mechanism at the

outset

Thereafter, the procedure provided further competitive bidding by specifying reasonable

for conducting an auction in the event of an objection to the purchase price.  The

procedures

estate rather than chilled bidding.  Accordingly, we determine that the bankruptcy court did

**B.** **Points Relevant to the Terminal Road Property Sale.**

**Propriety of amended notice**.

ellants next challenge the propriety of the notice given for the sale of the

Terminal

notice of sale required the property to be re-marketed, or that, at a minimum, the Trustee

have solicited new bids.  In addition, Appellants contend the amended notice mailed

on

requisite 20-day notice mandated by Fed. R. Bankr. P. 2002(a)(2).

For <u>In re Kendall Foods Corp.</u>  122 B.R.  792 (Bankr.

S.D.

subsequent bid is persuasive evidence that the lower initial bid was grossly inadequate.  __

<u>re Kendall Foods Corp.</u> <u>Kendall</u>

Foods, the debtor received several offers after the bidding closed which exceeded the successful bid by 11.8% to 35%. The bankruptcy court ruled that the difference of 35% established that the successful bid was grossly inadequate and, therefore, held that it would be appropriate to accept the later offers. Id. at 793. In the instant case, however, the record on appeal contains no evidence of competing bids that would support a claim that the market value of the leasehold interest is substantially greater than the proposed amended and reduced sale price. Moreover, the amended motion states that the reduction in price was the result of a variety of factors, including a shorter lease term, the loss of time on the front end of the lease, and the risk of an ability to negotiate with the lessors. These facts were not considered in the first offer, therefore, any difference between the first and second offers cannot be said to reflect an inherent inadequacy in the second, lower offer.

Furthermore, because the sale procedures remained unchanged, the provision of 13-day notice rather than 20-day notice of the amended sale terms is immaterial and does not constitute reversible error. Other parties, including the original two of the three highest bidders, were apprized of the new offer and afforded an opportunity to appear at the continued hearing scheduled for September 17, 1998, in order to object to the sale or tender a higher bid. No parties other than George Wintz and Wintz Properties objected to the sale and no higher offers were tendered. Because the amended notice was sufficient, and because the reduced sale price--although less than the initial offer-- nevertheless constituted the highest bid tendered, the bankruptcy court did not err in approving this sale. Accordingly, we deny this point of Appellants' appeal.

## 2. Appeal of the Terminal Road Property sale is moot

Finally, the court also determines that with respect to the Terminal Road Property, this appeal is moot. The Trustee has sold the Terminal Road Property, and, therefore, any relief granted by this court would be ineffective. See Ross v. Strauss (In re Ross), 223 B.R. 702, 703 (B.A.P. 8th Cir. 1998). See also United States v. Fitzgerald, 109 F.3d 1339, 1341 (8th Cir. 1997); Van Iperen v. Production Credit Assoc., 819 F.2d 189, 190 (8th Cir. 1987) (holding "[o]nce collateral is taken and converted into cash, no court is able to formulate adequate relief to the debtor."). This court has already stated that because Appellants did not obtain a stay pending appeal of the orders authorizing sale of these properties, reversal

13

of the orders authorizing sale would not affect sale of any of the properties (Rosemount, Walnut or Terminal Road) pursuant to 11 U.S.C. § 363(m). However, because the sale of the Terminal Road Property has taken place, that sale is not only unaffected by the appeal, but appeal of that sale is, itself, moot. Ross, at 703.

For the foregoing reasons, the orders of the bankruptcy court approving the sales of the Terminal Road Property, Rosemount Property and Walnut Property are affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH CIRCUIT