# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 01-6086WM

_____

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| Payless Cashways, Inc., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Steve Brink | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | Bankruptcy Court for the Western |
| v. | * | District of Missouri |
| | * | |
| Payless Cashways, Inc., | * | |
| Congress Financial Corporation | * | |
| Hillco Capital, L.P. | * | |
| | * | |
| Appellees | * | |

_____

Submitted: July 25, 2002
Filed: August 8, 2002

_____

Before KRESSEL, SCHERMER and DREHER, Bankruptcy Judges.

_____

KRESSEL, Bankruptcy Judge.

Steve Brink appeals from the bankruptcy court order[1] approving the sale of real property to him for $1.7 million.  The price approved by the bankruptcy court was $191,000 higher than Brink had previously bid under a non-judicial, sealed bid procedure conducted by the debtor's real estate broker.  We affirm.

## BACKGROUND

The material facts are not in dispute.  The debtor filed a Chapter 11 petition on June 4, 2001, and undertook to liquidate its real estate interests.  As part of that process, the debtor employed a real estate broker, Blaine McClelland.  McClelland decided to use a sealed bid procedure.  This procedure was never subjected to court review or approval, nor were creditors given notice or an opportunity to comment.

The initial procedure required bids for the subject property to be submitted, in the form of a contract, by August 9, 2001.  Brink submitted a bid of $1,509,000 to McClelland on August 7, 2001.  McClelland told Brink on August 9, 2001, that he was the highest bidder.  However, McClelland also advised Brink that because of the interest shown in the property, the debtor was going to send out additional bid contracts and revise and extend the bid deadline to August 15, 2001.  Brink submitted a new bid of $1,509,900 and McClelland again informed Brink, on August 15, 2001, that he was the high bidder.  McClelland requested, and Brink provided, a deposit of $25,000.  Brink, without counsel, and Payless then negotiated and executed a sale contract.

It is undisputed that the sale contract clearly stated that it was subject to court approval, and that Brink was aware of that requirement.  Despite this knowledge, and prior to any hearing to approve the sale, Brink unilaterally, and still without the advice of counsel, undertook the expense of obtaining a Phase I environmental study

---

[1] The Honorable Arthur B. Federman, Chief Judge, United States Bankruptcy Court for the Western District of Missouri.

of the property. He also unilaterally purchased furniture and fixtures located on the subject property. At no point did Brink ever attempt to obtain any bid protection provisions in his agreement with Payless.

Apparently, on or about September 10, 2001, Silverman Consulting, Inc, was appointed as Chapter 11 trustee.[2] The trustee filed a motion to approve the sale to Brink, together with several other pending sales, and gave notice of the motion on September 12, 2001. Pursuant to a standing order, all parties in interest had 10 days in which to object. Objections to the motion were filed by the official committee of unsecured creditors and by one of the debtor's primary lenders, Congress Financial Corporation. Brink admitted that he did not review the debtor's sale motion, nor did he make any effort to determine if objections to the proposed sale were filed.

A hearing on the sale motion was held on September 25, 2001. Brink did not attend the hearing. At the hearing, the trustee announced to the court that it appeared another bidder, S&D Developers, had made a higher and better bid than Brink.[3] The trustee suggested to the court that the court should hold an auction, either by phone that day or at a later date. When contacted, Brink objected to the court holding an auction (taking the position that he had a final purchase contract). Brink further

---

[2] We say "apparently" because such an appointment has not been made a part of the record and the trustee has not been made a party to or otherwise participated in this appeal, as we would have expected. If there is a trustee, it is the party in interest, not the debtor. Since the parties have ignored the existence of the trustee and its interest in this appeal, and because our decision is consistent with the interest of any such trustee, we will proceed in the trustee's absence.

[3] S&D's bid was $1,501,000 for the property, $8,000 less than Brink's bid. But, in addition, S&D offered to pay the debtor's real estate broker's commission and the state transfer taxes; costs which Brink did not offer to pay. This allegedly increased S&D's bid to $1,548,000, apparently making it higher than Brink's bid. The bankruptcy court found it unnecessary to rule on whether S&D's bid was higher since the court determined that a judicial auction should be held.

3

indicated that he wished to retain an attorney and did not want to proceed by phone that day. Therefore, the bankruptcy court continued the hearing on the motion to October 2, 2001.

On October 2, 2001, the court first held an evidentiary hearing to determine whether to proceed with the judicial auction. The court took extensive testimony and evidence. Brink took the position that, although his contract was subject to court approval, his expectations rose to the level that he had a binding deal that could only be upset if the bid price was shown to be grossly inadequate or there were "irregularities" in the process. Brink testified that McClelland advised him that the sale was subject to bankruptcy court approval, and he further stated that he understood that the sale was contingent upon bankruptcy court approval. Brink also acknowledged that the sale contract stated that it was subject to court approval. Nonetheless, he testified that his understanding, from speaking with McClelland, was that the court might not approve the sale if it was for less than fair value, but regarding the bidding process, the sale to him was a "done deal." The broker's testimony disputed this version. McClelland stated that he informed Brink both of the need for bankruptcy court approval and that it was possible another potential bidder could appear at the hearing to challenge the sale to Brink. The bankruptcy court found that Brink should have understood, "if nothing else, then from the documents that the process was subject to court approval."

Applying the Eighth Circuit Court of Appeals case *Food Barn*,[4] the bankruptcy court made detailed findings, and determined that "the most appropriate thing to do consistent with *Food Barn* [wa]s to rebid the matter." The court then held an auction in open court. Competing, countering bids were received from Brink and S&D. Eventually, Brink submitted the highest bid of $1.7 million, which the court

---

[4] *Four B. Corp. v. Food Barn Stores, Inc., (In re Food Barn Stores, Inc.)*, 107 F.3d 558 (8th Cir. 1997).

approved.  The court allowed Brink to escrow the difference between his auction bid and sealed bid pending the outcome of this appeal.  Brink's bid at the judicial auction was $191,000 higher than the broker's sealed bid procedure would have realized.

Brink alleges that the court committed errors of law by: (1) holding a "second auction" after the debtor had conducted a non-judicial, sealed bid auction wherein Brink alleges he submitted the highest bid[5]; and (2) holding a second auction after the debtor had signed a contract to sell the property to Brink.  As set forth below, Brink's arguments are without merit.

## DISCUSSION
### Standard of Review

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo.  *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 765 (8th Cir. 2000); *Wendover Fin. Servs. v. Hervey (In re Hervey)*, 252 B.R. 763, 765 (B.A.P. 8th Cir. 2000).  We will reverse matters committed to the bankruptcy court's discretion only if the bankruptcy court abused its discretion.  *See Four B. Corp. v. Food Barn Stores, Inc., (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 562 (8th Cir. 1997).

### *Food Barn*

The parties agree that this case is governed by *Food Barn*.[6]  Brink disputes whether the bankruptcy court properly applied *Food Barn*.  The cause of this dispute arises primarily from Brink's misreading of *Food Barn* and complete misunderstanding of the proper standard to be applied under these circumstances.

---

[5] Whether Brink's bid was the highest was disputed, but it is not necessary to resolve and is not an issue on appeal.

[6] 107 F.3d 558.

In *Food Barn*, the Eighth Circuit Court of Appeals held that, in determining whether to "re-open" bidding, a bankruptcy court should employ a "sliding scale approach" where "the importance of estate enhancement diminishes as an auction participant's *reasonable* expectations, and the gravity of finality, increase." *Food Barn*, 107 F.3d at 565 (emphasis added). Up to the point where the court actually enters an order confirming the sale, the Eighth Circuit recognized that a bankruptcy court has broad discretion to accept or reject bids and to conduct sales or auctions in the manner deemed most appropriate by the court. *See id.* at 565-67; *see also Wintz v. Am. Freightways, Inc., (In re Wintz Cos.),* 219 F.3d 807, 812 (8th Cir. 2000) (reiterating that "bankruptcy courts have wide discretion in structuring the sales of estate assets").

Brink does not dispute the court's findings of fact. Instead, he disputes the court's application of the law, essentially arguing that the court lacked the discretion to reject a bid obtained through a non-judicially approved bid procedure developed by a broker. Brink argues that his expectations rose to the level of finality of the sale and that the court therefore had no discretion to conduct an auction because there was "no evidence of a grossly inadequate price or fraud in the conduct of the proceeding . . . ." However, the "grossly inadequate price or fraud" standard is not applicable to the situation here, where there was no judicially approved sale. Brink's entire appeal is predicated upon a legal standard that is totally inapplicable in this case. Further, to the extent that Brink believed he had a "done deal," his expectations, as found by the bankruptcy court, were not reasonable since, as stated by the court, he should have at least realized through the documents, including the sale contract, that the sale was contingent upon court approval.

The standard which Brink wants applied is the standard used by courts where a party seeks to re-open bidding following a *judicially approved auction or sale. See Food Barn*, 107 F.3d at 564-65 (and cases cited therein); *In the Matter of Chung*

*King, Inc.,* 753 F.2d 547, 549-550 (7th Circuit 1985).[7]  As the Eighth Circuit stated in explaining its sliding scale approach:

> At some point, *such as when the court actually enters an order approving the sale*, expectations become sufficiently crystallized so as to render it improper to frustrate anticipated results except in the limited circumstances where there is a grossly inadequate price or fraud in the conduct of the proceeding.

*Food Barn*, 107 F.3d at 565 (emphasis added); *see also Chung King*, 753 F.2d at 549-550 (discussing the bankruptcy court's lesser discretion to set aside an order confirming a sale).

In this case, the bidding procedure was a procedure developed by the debtor's broker.  It was never subjected to court review, and never noticed to creditors and other parties in interest.  To argue that the bankruptcy court had no discretion to hold an auction in the face of a competing higher bid, based upon Brink's perception that he had a final contract with the debtor, is wrong and unsupported by any case law.  The findings of the bankruptcy court included: (1) that the broker-conducted auction was not conducted by the court nor approved by the court; (2) the contract stated it was subject to court approval and Brink knew this; (3) that the standing order in the case allowed parties ten days in which to object to the sale motion and two parties did, in fact, object; (4) Brink should have understood, if nothing else, then from the documents, that his bid was subject to court approval; (5) there was some question

---

[7]  We are baffled by Brink's reliance on *Chung King,* and similar cases, as supposed examples of cases wherein courts have refused to re-open bidding where the initially approved price was obtained in a "non-judicial" setting.  *Chung King* clearly involved an attempt to re-open bidding following a bankruptcy court order approving a sale.  *See Chung King,* 753 F.2d at 548-49.

as to whether Brink's bid was, in fact, the highest and best bid; and (6) Brink should have been aware of the possibility of a higher bid as he had some notice of this from the debtor's broker. The bankruptcy court committed no error in making these findings. Although Brink undoubtedly had some inchoate expectation to purchase the property for his original bid, the bankruptcy court did not abuse its discretion in finding that this expectation did not rise to a level warranting an approval of his bid without conducting a judicial auction. *See Food Barn*, 107 F.3d at 566-67.

Further, Brink unilaterally took a risk in proceeding with the environmental study and in purchasing the furniture and fixtures. He did so despite his knowledge that the contract was subject to court approval, and that no such approval had yet been received. His unilateral actions do not rise to a level where his expectations outweigh the creditors' interests in maximizing the benefit to the estate. Moreover, since Brink ultimately did succeed in purchasing the property, he benefitted from his premature, unilateral actions and cannot demonstrate any detrimental reliance regarding what the broker may have told him.

Brink also argues that the court erred as a matter of law in holding the judicial auction since the debtor signed a "final contract" with Brink committing to sell the property to him. This argument is utterly without merit.

First, Brink failed to include the contract in question in the record on appeal. As a reviewing court, we cannot determine whether a bankruptcy court committed clear error in its factual findings where the parties fail to provide the factual record. *See Hervey*, 252 B.R. at 767.

Second, the bankruptcy court correctly determined that the contract was subject to court approval, and Brink admitted that the contract specifically stated this contingency. Regardless of whether the contract contained this statement, the sale of

8

the bankruptcy estate's property was clearly subject to court approval under the express terms of the Bankruptcy Code. *See* 11 U.S.C. § 363(b).

Finally, the only case Brink cites in support of this argument, *In re Table Talk, Inc.,* 53 B.R. 937 (Bankr. D. Mass. 1985), is inapplicable and distinguishable. In *Table Talk,* the bankruptcy court upheld a bargained for contractual right of first refusal provided to the original bidder, which right had not received prior court approval. *See id.* Upholding this right did not mean that the bidder was able to purchase the property for his original bid, it merely allowed him to match a subsequent higher offer. When the second bidder wished to increase his bid, the court rejected it finding that the original bidder should have the benefit of its bargained for right of first refusal. *See id.* at 942-44. No such bid protection measures are at issue here. Moreover, the bankruptcy court committed no error in noting that *Table Talk* is a Massachusetts case, whereas the court here was bound by the Eighth Circuit's *Food Barn* decision, which allows a court more discretion and flexibility.

## CONCLUSION

The bankruptcy court was presented with objections to Brink's non-judicially obtained bid and with a potentially higher bid from S&D. The court did exactly what the Court of Appeals in *Food Barn* said it should do. The court's findings of fact were not erroneous, and we hold that the bankruptcy court did not abuse its discretion in determining to conduct a judicial auction. The judgment of the bankruptcy court is affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.

9