# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 02-6031EM

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Thermadyne Holdings | * | |
| Corporation, et al. | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Unsecured Creditors' Committee, | * | |
| Houlihan, Lokey, Howard & Zukin | * | |
| Financial Advisors, Inc., | * | |
| | * | |
| Appellants, | * | Appeal from the United States |
| | * | Bankruptcy Court for the Eastern |
| v. | * | District of Missouri |
| | * | |
| Joel Pelofsky, United States Trustee | * | |
| | * | |
| Appellee | * | |

_____

Submitted: September 17, 2002
Filed: October 3, 2002

_____

Before KOGER, Chief Judge, KRESSEL and DREHER, Bankruptcy Judges.

_____

KRESSEL, Bankruptcy Judge.

The Creditors' Committee and Houlihan, Lokey, Howard & Zukin Financial Advisors, Inc., appeal from the bankruptcy court order[1] denying the approval of indemnification and exculpation provisions within the appellants' letter of engagement. The Creditors' Committee and Houlihan Lokey also appeal the denial of their "motion for reconsideration." Because we believe the bankruptcy judge did not abuse his discretion, we affirm.

BACKGROUND

The material facts are not in dispute. On November 19, 2001, Thermadyne Holdings, Inc.[2] and twenty of its subsidiaries filed petitions for relief under Chapter 11. Thereafter, the U.S. Trustee appointed an unsecured creditors' committee. On December 21, 2001, the committee filed its application for retention of Houlihan Lokey. Through the application, the committee sought approval to retain Houlihan Lokey to provide an array of financial advisory services.[3] For such services Houlihan Lokey requested compensation of $125,000 per month and a transaction fee.

---

[1] The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

[2] The debtors' primary business is the manufacturing of cutting and welding equipment. They employ approximately 1,400 people.

[3] Houlihan Lokey agreed to perform the following: evaluate the assets and liabilities of the debtors and their subsidiaries, analyze and review the financial and operating statements of the debtors, evaluate all aspects of any debtor financing and any exit financing in connection with any plan, provide valuation or other financial analyses as the committee may require, assess the financial issues and options concerning a sale of the debtor or reorganization plan, prepare, analyze and explain any plan to the committee, and provide testimony.

The application attached and referred to an engagement letter dated December 14, 2001. This letter contained indemnification and exculpation provisions which stated the following:

> the Estates shall indemnify and the Committee (including its individual members and advisors) and the Estates (and its affiliates and advisors) shall hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, employees, agents and controlling persons within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities, (or actions in respect thereof), joint or several, arising out of or related to the Agreement, any actions taken or omitted to be taken by an Indemnified Party in connection with Houlihan Lokey's provision of services to the Committee and/or Committee Counsel, the Debtors and/or Debtors' Counsel, or any Transaction (as defined herein) or proposed Transaction contemplated thereby. In addition, the Estates shall reimburse the Indemnified Parties for any legal or other expenses reasonably incurred by them in respect thereof at the time such expenses are incurred; provided, however, there shall be no liability under the foregoing indemnity and reimbursement agreement for any loss, claim, damage or liability which is finally judicially determined to have resulted from the willful misconduct or gross negligence of any Indemnified Party.

To resolve numerous objections[4] from the U.S. Trustee and the debtors[5] regarding the indemnity and exculpation provisions, Houlihan Lokey agreed to modify the scope of the disputed provisions within the engagement letter by including the following in a proposed order:

> (a) Houlihan Lokey shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for Services other than the financial advisory and investment banking services provided under the Engagement Letter, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

> (b) The Debtors shall have no obligation to indemnify Houlihan Lokey, or provide contribution or reimbursement to Houlihan Lokey, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen solely from Houlihan Lokey's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing; or (ii) settled prior to a judicial determination as to Houlihan Lokey's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which Houlihan

---

[4] ABN AMRO Bank N.V. objected to the committee seeking approval of Houlihan Lokey's retention pursuant to 11 U.S.C. § 328(a), and also objected to the monthly fee and transaction fee requested by Houlihan Lokey, stating it was excessive.

[5] The debtors, in their objection, stated that the portion of the indemnification provision that releases Houlihan for any liability arising from its engagement other than that judicially determined to be willful misconduct or gross negligence is inappropriate. They further stated that the proposed indemnity is inappropriate because the debtors have no control or supervision over Houlihan, the activities it will undertake, the people it will communicate with or what its representatives are saying.

4

Lokey should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter as modified in this Order;

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Houlihan Lokey believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, Houlihan Lokey must file an application therefore with this Court, and the Debtors may not pay any such amounts to Houlihan Lokey before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Houlihan Lokey for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Houlihan Lokey. Notwithstanding this subparagraph, the United States Trustee shall retain the right to object to any demand by Houlihan Lokey for indemnification, contribution and reimbursement; and

(d) The limitation on any amounts to be contributed by all Indemnified Persons in the aggregate shall be eliminated.

By the time of hearings, the U.S. Trustee was the only party that continued to object to the indemnification and exculpation provisions, arguing that the provisions were per se inconsistent with the notions of professionalism, they placed creditors at risk of financial injury, and they could not be considered reasonable under the standards of 11 U.S.C. § 328(a). The application was heard by the bankruptcy court

on January 29, 2002. On February 12, 2002 the bankruptcy court issued its memorandum opinion and order allowing the employment of Houlihan Lokey, but disapproving the indemnification and exculpation provisions in the engagement agreement.[6] The committee and Houlihan Lokey filed a "motion for reconsideration of the order" which was denied by the bankruptcy court on April 29, 2002. Houlihan Lokey filed a timely appeal.

## DISCUSSION
### *Standard of Review*

We review the bankruptcy court's findings of fact for clear error and review its legal conclusions *de novo*. Fed. R. Bankr. P. 8013; *First Nat'l Bank of Olathe, Kan. v. Pontow*, 111 F.3d 604, 609 (8th Cir. 1997); *Hartford Cas. Ins. Co. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 214 B.R. 197, 199 (B.A.P. 8th Cir. 1997). We review for clear error the bankruptcy court's factual finding that under 11 U.S.C. § 328(a), the indemnification and exculpation provisions were not reasonable under the circumstances. We review the bankruptcy court's discretionary decision to deny the application under the proposed terms pursuant to 11 U.S.C. § 1103(a)[7] for abuse

---

[6] In one sense, it is not really appropriate for the bankruptcy court to change the arrangements made between the committee and Houlihan Lokey. Its role is to approve the employment pursuant to the proposed terms or disapprove it. *See Regen Capital, III, Inc. v. Official Committee of Unsecured Creditors (In re Trism, Inc.)*, 2002 WL 31039681, *5 (B.A.P. 8th Cir. 2002) (stating that the bankruptcy court's role was to either approve or disapprove the settlement as presented). In this case, however, Houlihan Lokey remained free to decide whether or not to work for the committee. Houlihan Lokey is not obligated to work for the committee on terms different than it negotiated. For purposes of this appeal, we treat the order of the bankruptcy court as denying the application under the proposed terms.

[7] Under 11 U.S.C. § 1103(a) the bankruptcy judge can approve or deny employment of a professional whom the committee seeks to retain. This provision states:

of discretion. Matters committed to the bankruptcy court's discretion will be reversed only if the court abused its discretion. *City of Sioux City, Iowa v. Midland Marina, Inc. ( In re Midland Marina, Inc.)*, 259 B.R. 683, 686 (B.A.P. 8th Cir. 2001). An abuse of discretion occurs if the bankruptcy court fails to apply the proper legal standard or fails to follow proper procedures in making its determination, or if the court bases an award upon findings of fact that are clearly erroneous. *Chamberlain v. Kula (In re Kula)*, 213 B.R. 729, 735 (B.A.P. 8th Cir. 1997); *Agate Holdings, Inc. v. Ceresota Mill, L.P. (In re Ceresota Mill, L.P.)*, 211 B.R. 315 (B.A.P. 8th Cir. 1997); *Mathenia v. Delo*, 99 F.3d 1476, 1480 (8th Cir. 1996), *cert. denied*, 477 U.S. 909 (1986). A finding of fact will not be reversed as clearly erroneous unless the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Wintz v. American Freight Ways, Inc. (In re Wintz Cos.)*, 230 B.R. 840, 844 (B.A.P. 8th Cir. 1999) (citing *Waugh v. Eldridge (In re Waugh)*, 95 F. 3d 706, 711 (8th Cir. 1996)). Finally, we review a bankruptcy court's denial of a "motion to reconsider"[8] for abuse of discretion. *Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1229 (8th Cir. 1997); *Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assoc., Inc.*, 194 F.3d 922, 925 (8th Cir. 1999); *Crofford v. Conseco Fin. Servicing Corp. (In re Crofford)*, 277 B.R. 109, 111 (B.A.P. 8th Cir. 2002).

---

> At a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee.

11 U.S.C. § 1103(a).

[8] Neither the Bankruptcy Code nor the Rules recognize any such motion. *Arleaux v. Arleaux* (*In re Arleaux)*, 229 B.R. 182, 184 (B.A.P. 8th Cir. 1999). The appellant, however, characterizes this motion as a Fed. R. Civ. P. 60(b)(6) motion, made applicable to this case by Fed. R. Bankr. P. 9024.

*Per Se Rule*

The appellants argue that the bankruptcy court adopted a per se rule and made a legal determination that the indemnification and exculpation provisions are, as a matter of law, unreasonable under 11 U.S.C. § 328(a).[9] Although the U.S. Trustee did argue that indemnification and exculpation are unreasonable as a matter of law, the bankruptcy court neither adopted nor rejected a per se rule. Furthermore, though the bankruptcy court, in isolated statements, expressed strong views on indemnification and exculpation of professionals employed in a bankruptcy case in general, it did not apply a per se rule in this case. Reading the bankruptcy court's opinion in totality, we

---

[9] 11 U.S.C. § 328(a) is the provision which iterates terms under which a trustee, debtor in possession or committee can employ a professional. It is not itself a separate source of employment approval. If such terms and conditions are not reasonable, the bankruptcy judge may exercise his discretion, and deny the employment under 11 U.S.C. § 1103(a). 11 U.S.C. § 328(a) provides:

> (a)The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on *any reasonable terms or conditions of employment*, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a) (emphasis added).

find that the opinion definitely discusses reasons why the indemnity and exculpation provisions were not reasonable under the circumstances of this case.

The bankruptcy judge considered and discussed factors such as market conditions, current economic conditions, and the potential economic costs to the estate to ultimately find that the indemnity and exculpation provisions were not reasonable under 11 U.S.C. § 328(a) and not in the best interest of the estate. Pursuant to 11 U.S.C. § 1103(a), the bankruptcy court exercised its discretion to deny employment in this case under an arrangement which provided indemnification and exculpation to Houlihan Lokey. The bankruptcy court did not apply a per se rule.

For example, the bankruptcy court in its opinion and order held that "for the reasons set forth below, the Court concludes *that in this case* the indemnification provisions are unreasonable" *In re Thermadyne Holdings, Inc.*, No. 01-52840-399 at 1 (Bankr. E.D. Mo. Feb. 12, 2002) (emphasis added). With regard to the fact-sensitive analysis under 11 U.S.C. § 328(a), the bankruptcy court further stated in its discussion that "The focus of the Court's analysis in regard to this section is on the term 'reasonable', specifically whether the terms of the indemnity agreement included in the engagement letter are reasonable." *Id*. at 3. With regard to Houlihan Lokey's market condition argument, the bankruptcy court stated :

> This argument is unavailing *under the circumstances of this case*...non-monetary terms, should be considered in *terms of the debtor's bankruptcy environment*. What is reasonable is not and has not been defined solely by what market conditions suggest...What is reasonable must be assessed with due regard *for the particular and unique circumstances of each bankruptcy case*.

*Id*. at 4-5 (emphasis added). Keeping within the analysis of reasonableness under the circumstances, the bankruptcy court found that for this estate to bear the risk of

unlimited liability and exculpation was simply unreasonable. *Id.* at 5. Finally, the bankruptcy court found that the impact and financial risk to this estate should be finite and certain, and because such risks were not, it was unreasonable under the circumstances of this case to approve the indemnification and exculpation provisions.

*Reasonable Terms and Conditions of Employment*

In their brief, the appellants state that the only issue on appeal is whether the bankruptcy judge erred *as a matter of law* in making a per se ruling that indemnity and exculpation is per se improper. The appellants further argue that we should review this legal conclusion *de novo*. Having ruled that the bankruptcy judge did not adopt a per se rule, it is not clear to us that the appellants have preserved any other issues. However, we nevertheless discuss whether the bankruptcy judge erred in finding that the indemnity and exculpation provisions were unreasonable under the circumstances of this case.

The appellants correctly state that the Bankruptcy Code does not prohibit indemnification or exculpation of professionals hired by creditors' committees or the debtor. Yet the appropriate inquiry, and the inquiry made by the bankruptcy court, is whether taken as a whole the terms of the retention are reasonable. 11 U.S.C. § 328(a) requires the bankruptcy judge to find what is reasonable under the circumstances and such a finding can only be made on a case by case basis. *See In re Mortgage & Realty Trust*, 123 B.R. 626, 630 (Bankr. C.D. Cal. 1991) (stating that Section 328(a) authorizes a condition of employment only if it is reasonable); *In re Allegheny Int'l Inc.*, 100 B.R. 244, 246 (Bankr. W.D. Pa. 1989) (stating that Section 328(a) empowers a debtor in possession or a committee to employ professionals on any reasonable terms and conditions of employment *subject to court approval*) (emphasis in the original).

Thus, the question for the bankruptcy court was whether the terms and conditions of Houlihan Lokey's employment were reasonable under the circumstances. Moreover, as the proponent of the application for approval of the provision in dispute, the committee bore the burden of establishing that such terms of employment were reasonable under the circumstances. *In re Metricom, Inc.*, 275 B.R. 364, 371 (Bankr. N.D. Cal. 2002). The bankruptcy court must be persuaded that the terms and conditions are in the best interest of the estate. *In re Gillett Holdings, Inc.*, 137 B.R. 452, 455 (Bankr. D. Colo. 1991) (quoting *In re C&P Auto Transp., Inc.*, 94 B.R. 682, 686 (Bankr. E.D. Cal. 1988)). The bankruptcy court found that from the evidence available, the committee had not met its burden and for the following reasons we agree.

Though the majority of the appellants' argument discusses how the per se rule, supposedly adopted by the bankruptcy court, is not warranted by case law and the Bankruptcy Code, the appellants in the same vein seem to argue that indemnity and exculpation are per se *reasonable* because such provisions are routine outside of bankruptcy, and because they agreed to it after arms length negotiations. The appellants also discuss and cite numerous cases to support their proposition that the indemnity and exculpation provisions are reasonable under 11 U.S.C. § 328(a). Unfortunately, the appellants neglect the fact that 11 U.S.C. § 328(a) requires that they prove the disputed provisions are *reasonable under the circumstances of this case*, and the appellants simply do not address this issue.

The main argument the appellants discuss is that prevalent terms and conditions of employment available and included in employment agreements for professionals outside of bankruptcy, should similarly be available and included in employment agreements for professionals in bankruptcy cases. *See In re Joan and David Halpern Inc.*, 248 B.R. 43, 46-47 (Bankr. S.D. N.Y. 2000) (stating that common law principles permit indemnity of fiduciaries, and that the indemnity sought by the professionals procured by the debtor in the case was fair and reasonable and

11

in the best interest of the estate); *In re United Artists*, No. 00-3514 (Bankr. D. Del December 1, 2000) (stating that because Delaware law permits indemnification of fiduciaries for ordinary negligence, the fact of bankruptcy does not detract from the recognized need for indemnification of such officials, and the debtors' motion to retain financial advisors under such conditions of indemnity is granted).

Regarding this argument, the bankruptcy court found that prevailing employment terms and conditions are to be considered, but should only be one factor in the analysis of "reasonable" in the totality of the circumstances. Additionally, the bankruptcy court found that non-monetary terms of engagement should be considered in terms of the circumstances of each bankruptcy case, as well as for the fair and equitable administration of the bankruptcy estate, and what is reasonable is not and has not been defined solely by what market conditions suggest. We agree.

Although due deference should be given to the standards applicable to certain professions outside the bankruptcy context, the bankruptcy court is not bound absolutely by those standards. *In re Gillett Holdings, Inc.,* 137 B.R. at 456. Rather, the court is first bound by the dictates of the Bankruptcy Code. *Id.* Moreover, prevailing employment terms and conditions outside the bankruptcy context should be considered, but should only be one of many factors in the analysis of what is "reasonable" in the totality of the circumstances. The bankruptcy court correctly found that there is no blanket mandate that all terms or conditions of employment for professionals allowed or approved outside of bankruptcy must be similarly allowed or approved within bankruptcy. These considerations, however, should be but one factor in the analysis of what is reasonable under the circumstances. *See In re Metrocom, Inc.*, 275 B.R. at 372 (stating that no matter how "standard" such protections may be, they are not the norm in this Chapter 11 case).

The appellants also argue that the need for indemnification is imperative in the existing economic and corporate litigation climate. The bankruptcy court responded

to this argument by finding that if economic conditions are such as to spur dissatisfied parties to litigation, there is even greater cause to protect the estate from that risk. Additionally, the bankruptcy court found that under the circumstances, it is prudent and reasonable that such a risk be borne by the party providing the service. This finding by the bankruptcy court is not clearly erroneous. Furthermore, there is not sufficient evidence that indemnity insurance would be unavailable to Houlihan Lokey or is too expensive to procure.[10] Nor is there sufficient evidence that the committee could not have obtained comparable services for the same price from another financial advisor without having to agree to the disputed provisions. Again, the appellants are arguing why indemnity and exculpation is reasonable for *itself*, not why it is reasonable for the estate to bear such a risk in the totality of the circumstances.

Finally, the appellants argue that without the indemnification and exculpation provisions in the employment agreement, the estate would be burdened with potentially increased economic costs in the form of increased fees, or the committee may lose the financial advisor of its choosing. In response to this argument the bankruptcy court found, in essence, that assuming the committee would have to employ a financial advisor for higher fees without the indemnity provisions required

---

[10] In paragraph nine of the Declaration of Jonathan Cleveland, Cleveland, who is a director in the financial restructuring group of Houlihan Lokey, states "the risks to Houlihan Lokey from any claim relating to a financial restructuring engagement that involves hundreds of millions of dollars, and often more, is enormous...this is a risk that Houlihan Lokey–a privately owned organization with less than 250 professional employees–does not, and cannot insure against." Yet in the same paragraph Mr. Cleveland seems to contradict this statement by saying "absent limited indemnification and exculpation of the type contained in the Indemnification Provisions, Houlihan Lokey would be required to either substantially increase the fees its charges for its services (to cover additional insurance if it is available, or 'self insure' against the risk), or forego the engagement." Thus, the statement that Houlihan Lokey cannot insure against the risk of potential claims made against it in a financial restructuring engagement not only lacks foundation, but is also internally inconsistent.

by Houlihan Lokey, such a result would have a finite and certain impact on the value of the estate, which is better than the potentially unlimited impact the estate would face if such provisions were approved. This finding was not clearly erroneous.

Moreover, other bankruptcy courts have rejected this argument made by the appellants. *See In re Mortgage & Realty Trust*, 123 B.R. at 631 (finding that the argument made by Dean Whitter, that without indemnity it would have to decline employment and this would cause great harm to the debtor, was not a legitimate ground for authorizing an indemnity agreement). Finally, Houlihan Lokey has continued to provide its services to the committee, without the indemnification and exculpation provisions, and has been compensated by the estate for such services. There is no reason why it cannot continue this in the absence of the disputed provisions.

In addition, we note that the majority of the bankruptcy cases the appellants cite to support their proposition that indemnity and exculpation is reasonable within bankruptcy cases, deal with situations where the debtor not only indemnifies the proposed professional, but also *seeks to retain* that professional for its *own use* during the bankruptcy case.[11] Very few of the cases cited by the appellants, however, discuss the situation we are confronted with in this case: a professional firm hired by the committee for its own use during the bankruptcy, yet requiring the debtor, a non-client, to indemnify the firm. Neglecting this unique difference causes the appellants' argument, that market conditions warrant the finding that the disputed provisions under the circumstances of this case are reasonable, to be highly speculative at best. In situations where the debtor is the client indemnifying the professional it hires, the

---

[11] The appellants cite such cases as *In re Geneva Steel Co.*, 258 B.R. 799, 803 (Bankr. D. Utah 2001); *In re Comdisco, Inc.*, No. 01 B 24795 (N.D. Ill. Jan. 24, 2002); *In re Kmart Corp.*, No. 02 B 02474 (Bankr. N.D. Ill. Mar. 28, 2002); and *In re LTV Steel Co., Inc.,* No. 4:01 CV1116 (N.D. Ohio), among others, to support their market conditions argument.

debtor has a certain amount of control over the acts of the firm and can minimize the risk of negligent acts. In contrast, when the debtor is not the client yet is still responsible for indemnification of its opponent, there is virtually no control over the acts of the firm, and consequently there is no control over potential negligent acts the firm may commit.

Moreover, the appellants have stated that the indemnification provisions in no way implicate the "giving away of claims" against professionals, but rather reimbursing Houlihan Lokey in the unlikely event that a claim is asserted against it. The appellants further state that Houlihan Lokey established with the bankruptcy court that it was aware of no such claim having ever been made by a Chapter 11 debtor, thus it was not difficult for the committee and the debtors to conclude the indemnification and exculpation protections presented them with little if any financial risk. While there may be no current apparent harm in binding the estate to perform a future act that it probably will not be called on to perform, that does not mean that it is reasonable to impose such a burden on the estate in the first place, even if the risk is de minimus. *In re Metrocom, Inc.*, 275 B.R. at 374. Nevertheless, it was the committee's burden under 11 U.S.C. § 328(a) to show it was reasonable for the estate to be exposed to any risk at all. *Id.* at 374-375. The bankruptcy court found this burden had not been met.

*"Motion to Reconsider"*

Regarding the bankruptcy court's denial of the appellants' 60(b)(6) motion, "motion to reconsider"[12], we hold that the bankruptcy court did not abuse its discretion. Rule 60(b)(6) permits a court to grant relief "from a final judgment, order or proceeding for...any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). Relief under Rule 60(b) is an extraordinary

---

[12] See footnote 8.

15

remedy. *Watkins v. Lundell*, 169 F.3d 540, 544 (8th Cir. 1999) (quoting *Nucor Corp. v. Nebraska Pub. Power Dist.*, 999 F.2d 372, 374 (8th Cir. 1993)). Rule 60(b)(6) does not give courts unlimited authority to fashion relief as they deem appropriate. *Doe v. Zimmerman (In re Zimmerman)*, 869 F.2d 1126, 1128 (8th Cir. 1989). It is not a substitute for other legal remedies. *Id.* Relief under Rule 60(b) will be granted only where the movant has shown exceptional circumstances. *Hepper v. Adams County,* 133 F.3d 1094, 1096 (8th Cir. 1998). The appellants have shown none. If we were to revisit the factual findings of the bankruptcy court without some showing of exceptional circumstances, then Rule 60(b)(6) would be "nothing more than and end-run around the entire judicial process." *Watkins v. Lundell*, 169 F.3d at 545.

## CONCLUSION

The bankruptcy court found that the indemnity and exculpation provisions in the Houlihan Lokey engagement agreement were not reasonable under the circumstances of the case. This finding was not clearly erroneous. Finally, the bankruptcy court did not abuse its discretion in not approving the employment under the proposed terms, and did not abuse its discretion in denying the "motion to reconsider." The judgment of the bankruptcy court is therefore affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.