# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

―――――

No. 03-6004WM

―――――

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| Farmland Industries, Inc., | * | |
| | * | |
| Debtor | * | |
| | * | |
| Official Committee of Unsecured | * | |
| Creditors, | * | |
| | * | |
| Appellant | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| v. | * | Western District of Missouri |
| | * | |
| Farmland Industries, Inc.; Farmland | * | |
| Foods, Inc.; Farmland Transportation, | * | |
| Inc.; Farmland Pipeline Co.; SFA, Inc., | * | |
| | * | |
| Debtors-Appellees | * | |
| | * | |
| Official Committee of | * | |
| Bondholders, | * | |
| | * | |
| Appellee | * | |

―――――

Submitted: July 14, 2003
Filed: August 7, 2003

―――――

Before KRESSEL, Chief Judge, SCHERMER and DREHER, Bankruptcy Judges.

―――――

KRESSEL, Chief Judge.

The Committee of Unsecured Creditors appeals the November 27, 2002 memorandum order of the bankruptcy court[1] allowing the transaction fees earned by Houlihan Lokey Howard & Zukin Financial Advisors, Inc. to be paid from any recoveries obtained by the unsecured creditors, and not out of the general funds of the bankruptcy estate. The Creditors' Committee also appeals from the bankruptcy court's order denying its motion to reconsider, alter or amend the November 27th order. We affirm.

## BACKGROUND

On May 31, 2002, Farmland Industries, Inc. and various affiliates filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The United States Trustee appointed two committees, the Committee of Bondholders and the Committee of Unsecured Creditors. The Bondholders' Committee hired advisors who would be paid a success fee from the constituents' share. On June 18, 2002, the Creditors' Committee filed a motion pursuant to 11 U.S.C. §§ 1103(a) and 328(a) seeking authority to employ the firm of Houlihan Lokey Howard & Zukin Financial Advisors, Inc. as financial advisors. Compensation included a monthly fee of $150,000, paid by the debtors from estate funds, and a transaction fee of one percent of the amount distributed to the Creditors' Committee's constituency, all payable presumably as administrative expenses.

On June 20, 2002, at the hearing on the motion, the debtors objected to the payment of the proposed transaction fee to Houlihan Lokey as an administrative expense. They argued that the transaction fee should be paid out of the recoveries of the unsecured creditors whose interests are represented by the Creditors' Committee rather than out of the general funds of the bankruptcy estate. The Creditors' Committee, wishing to resolve the issue and wanting an opportunity to review what

_____

[1] The Honorable Jerry W. Venters, United States Bankruptcy Judge for the Western District of Missouri.

the other financial advisors provided in their employment applications, requested that the bankruptcy court approve the employment of Houlihan Lokey, but postpone the determination of the administrative expense status of the transaction fee until July 9, 2002. Neither the debtors nor the Bondholders' Committee objected to the request.

On June 21, 2002, the bankruptcy court entered an Interim Order authorizing the employment of Houlihan Lokey. The order also provided that any transaction fee payable to Houlihan Lokey would be subject to review under 11 U.S.C. § 330, but specifically reserved ruling on the administrative expense status of the transaction fee in order to allow the Creditors' Committee, the debtors, and other parties in interest to resolve the issue. The parties failed to resolve the issue, and at an October 22, 2002 hearing, the Creditors' Committee asked the bankruptcy court to rule on the transaction fee issue and enter a final order concerning Houlihan Lokey's employment.

The Creditors' Committee argued in support of allowing the transaction fee as a § 503 administrative expense payable out of the general funds of the debtors' bankruptcy estates. The debtors and the Bondholders' Committee argued that the transaction fees be paid out of the recoveries payable to the unsecured creditors, other than Bondholders.

The bankruptcy court, on November 27, 2002, issued an order concerning the administrative status of the transaction fee. In its order, the bankruptcy court found that although any transaction fees payable to Houlihan Lokey would be paid as an administrative expense pursuant to 11 U.S.C. § 503, payment of that expense should be paid not from the general funds of the bankruptcy estate, but from any distributions that would be made to unsecured creditors represented by Houlihan Lokey and the Creditors' Committee. The bankruptcy court further ordered that counsel for the Creditors' Committee, within ten days of the order, submit to the court a proposed final order with respect to the retention of Houlihan Lokey containing provisions

3

consistent with the November 27th order. The Creditors' Committee never submitted the proposed final order, and instead filed a motion requesting the bankruptcy court to alter or amend the November 27th order. On January 8, 2003, the bankruptcy court denied the motion, and on January 19, 2003, the Creditors' Committee filed a timely notice of appeal.

## JURISDICTION

We look first to the procedural posture of the proceedings, including whether or not the order appealed from is a final order. As we discussed in *Moix-McNutt v. Coop (In re Moix-McNutt)*, 215 B.R. 405, 407 (B.A.P. 8th Cir. 1997), 28 U.S.C. § 158(a)(1) confers jurisdiction on a bankruptcy appellate panel to hear appeals from "final judgments, orders, and decrees," a small list of interlocutory orders and, in its discretion, other interlocutory orders. *Id*. at 408 (citing 28 U.S.C. §§ 158(a)(2) and (3)). Like all courts we have a duty to review our own jurisdiction. *Nieters v. Sevcik (In re Rodriquez)*, 258 F.3d 757, 759 (8th Cir. 2001) (citing *Olin Water Servs. v. Midland Research Labs., Inc*., 774 F.2d 303, 306 (8th Cir. 1985)).

As we stated in *In re Thermadyne Holdings Corp.*, when a trustee, a debtor in possession or a committee applies to approve employment of a professional, the role of the bankruptcy court is to either approve the employment pursuant to the terms proposed by the applicant or disapprove it. *Unsecured Creditors' Committee v. Pelofsky (In re Thermadyne Holdings Corp*.), 283 B.R. 749, 754, n.6 (B.A.P. 8th Cir. 2002) (citing *ReGen Capital III, Inc. v. Official Committee of Unsecured Creditors (In re Trism, Inc.)*, 282 B.R. 662, 668-669 (B.A.P. 8th Cir. 2002)). It is not appropriate for the bankruptcy court to change those terms or otherwise dictate them. If the bankruptcy court finds a term of the employment or compensation objectionable, it should deny the application and let the applicant decide whether to pursue the employment on different terms or appeal. Here the parties, including the Creditors' Committee, requested that the bankruptcy court decide the question of payment of the transaction fee separately from the employment of Houlihan Lokey. While we do not necessarily believe that this is the best approach, we cannot say that

the bankruptcy court erred by following the wishes of the parties. Because the issue of the appropriateness of the compensation to Houlihan Lokey was treated separately from the issue of its employment, we believe that the order appealed from is a final order, since it finally determined that issue. We reject the suggestion that Houlihan Lokey must wait until it files a fee application and have it denied before the committee can raise this issue on appeal.[2]

## STANDARD OF REVIEW

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 765 (8th Cir. 2000); *Wendover Fin. Servs. v. Hervey (In re Hervey)*, 252 B.R. 763, 765 (B.A.P. 8th Cir. 2000). Matters committed to the bankruptcy court's discretion will be reversed only if the court has abused its discretion. *City of Sioux City, Iowa v. Midland Marina, Inc. (In re Midland Marina, Inc.)*, 259 B.R. 683, 686 (B.A.P. 8th Cir. 2001). An abuse of discretion occurs if the bankruptcy court fails to apply the proper legal standard or fails to follow proper procedures in making its determination, or if the court bases an award upon findings of fact that are clearly erroneous. *Chamberlain v. Kula (In re Kula)*, 213 B.R. 729, 735 (B.A.P. 8th Cir. 1997). A finding of fact will not be reversed as clearly erroneous unless the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Wintz v. American Freightways, Inc. (In re Wintz Cos.)*, 230 B.R. 840, 844 (B.A.P. 8th Cir. 1999) (citing *Waugh v. Eldridge (In re Waugh)*, 95 F.3d 706, 711 (8th Cir. 1996)). Finally, we review a bankruptcy court's denial of a post judgement motion for abuse of discretion. *In re Thermadyne Holdings Corp.*, 283 B.R. at 755 (citing *Kocher v.*

---

[2] Stating it this way illustrates the problem with the argument. The Creditors' Committee is the aggrieved party in this appeal, but it would be Houlihan Lokey which would apply for payment of compensation as an administrative expense and have it denied. It would be the aggrieved party on that order. Who would appeal which order?

*Dow Chem. Co.*, 132 F.3d 1225, 1229 (8th Cir. 1997); *Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assoc., Inc.*, 194 F.3d 922, 925 (8th Cir. 1999)).

## DISCUSSION

The Creditors' Committee argues that the bankruptcy court's order violates the plain meaning of 11 U.S.C. §§ 330 and 503. Specifically, the Creditors' Committee contends that because the bankruptcy court concluded in the Interim Order that any transaction fee payable to Houlihan Lokey would be subject to the standard of review of 11 U.S.C. § 330, which provides for professionals to receive reasonable compensation for their actual and necessary services, the court is by necessity bound by 11 U.S.C. § 503(b), which allows administrative expenses, including compensation and reimbursement awarded under § 330(a). We disagree.

The bankruptcy court, at the Creditors' Committee's request, merely incorporated the terms of an agreement made by the parties into its order, implying that no matter who paid the compensation, it would be subject to bankruptcy court approval. We do not believe that the bankruptcy court in any way bound itself to approve the employment under the terms now proposed by the Creditors' Committee. This was not an abuse of discretion on the part of the bankruptcy court. It makes no sense for the bankruptcy court to explicitly reserve the issue of payment and then subtly decide the issue by the inclusion of this provision in its Interim Order. The incorporation of § 330 was merely a shorthand reference for the procedure and standards applied under that provision.

The Creditors' Committee next argues that the bankruptcy court's memorandum order violates the priorities established by 11 U.S.C. § 507. Specifically, the Creditors' Committee argues that because § 507(a)(2) provides that all administrative expenses allowed under § 503(b) will be entitled to the same priority status, the bankruptcy court did not have the authority to allocate the transaction fee to the debtors' general unsecured creditors. We disagree.

Even the Creditors' Committee concedes that there is nothing inherently wrong with constituencies paying transaction fees of the professionals they hire as long as there is an agreement to be paid in this manner.[3] Section 328(a) specifically provides that employment can be "on any reasonable terms and conditions." *See* 11 U.S.C. § 328(a). What the Creditors' Committee really argues is that the bankruptcy court cannot force professionals to receive such fees from their constituencies.

Under other circumstances, we might agree. We reiterate that the bankruptcy court's role ordinarily is to either approve the employment pursuant to the terms proposed by the applicant or disapprove it. *See In re Thermadyne Holdings Corp.,* 283 B.R. at 754, n.6. It is normally not free to change the terms of employment bargained for by the parties. But in this case, the parties, including the Creditors' Committee, specifically requested that the bankruptcy court enter an Interim Order that ruled on the employment of Houlihan Lokey and its monthly fee, but reserved a separate ruling on whether the terms proposed by the Creditors' Committee for payment of the transaction fee were reasonable or whether the terms proposed by the debtor were reasonable. If the Creditors' Committee wanted to insist that the transaction fees be paid from the general funds of the debtors' estate, it should have insisted that the bankruptcy court either approve the employment pursuant to those terms or disapprove it.

We do not believe the bankruptcy court abused its discretion when it held that the transaction fees of Houlihan Lokey should be paid from any distributions made to the unsecured creditors represented by that firm. The bankruptcy court found that the transaction fee should be paid from the distributions made to unsecured creditors because Houlihan Lokey is working specifically for the benefit of those creditors, not

---

[3] For example, the agreement made between the Bondholders' Committee and their financial advisor Ernst & Young Corporate Finance, allows any "completion fee" payable to Ernst & Young to be paid from the distributions made to the Bondholders.

for the benefit of all creditors or the overall benefit of the bankruptcy estate. The court also found that because Houlihan Lokey's transaction fee was bargained for by the Creditors' Committee on behalf of the general unsecured creditors, that body, and not the general creditor body, should be responsible for paying for any benefits of their bargain. This seems especially fair since there is another group of unsecured creditors, the Bondholders, who will be paying their consultant from their recovery. If Houlihan Lokey's transaction fee was paid from the estate generally, the Bondholders would, in effect, be paying a portion of it. Moreover, the court found that although the efforts of Houlihan Lokey may produce some benefits for the general creditor body, Houlihan Lokey's allegiance is to the Creditors' Committee and its transaction fees are based on what it helps to recover for them. In light of this fact, the bankruptcy court determined that the Creditors' Committee and not the general creditor body should pay for such services.

The Creditors' Committee argues that the bankruptcy court's determination is based on clearly erroneous findings of fact. Specifically, the Creditors' Committee argues that the debtors' Schedule of Assets and Liabilities show a total amount of general unsecured debt of approximately 567.7 million dollars among the five debtors in this case, and this amount does not include claims for rejection of executory leases and contracts, or for the ripening or estimation of other contingent unsecured claims. The Creditors' Committee argues that with rejection claims and other contingent claims, the general unsecured claims of the debtors may, in fact, exceed the unsecured claims of the Bondholders, whose claims total approximately 580 million dollars. Thus, the Creditors' Committee reasons, the bankruptcy court was erroneous when it asserted that the claims of general unsecured creditors presently total approximately 200 million dollars, and that paying the transaction fee out of the general funds of the estate would mean that the Bondholders would shoulder approximately seventy five percent of the cost of the fee, whereas unsecured creditors would bear only twenty five percent.

We note that the Creditors' Committee has not pointed to evidence in the record to support its argument, but even assuming that its prediction of general unsecured claims is correct, this factor was but one of the factors that the bankruptcy court considered when it determined that the transaction fees of Houlihan Lokey should be paid from distributions made to the unsecured creditors represented by that firm.[4] For example, the bankruptcy court stated that it viewed the transaction fee negotiated by Houlihan Lokey and the Creditors' Committee as essentially a contingent fee, sometimes referred to as a success fee in bankruptcy cases, that will be based on the amount of any recovery Houlihan Lokey helps to obtain for the unsecured creditors. The court went on to state that it is customary that parties who contract for the payment of a fee based on the success of the representation to pay that fee from the recoveries made. Most important, the bankruptcy court noted that Houlihan Lokey is presently receiving a monthly fee of $150,000 that is being paid by the debtors from estate funds. The transaction fee is an additional, contingent fee of one percent of the amount distributed to the Creditors' Committee's constituency and should be paid by the creditors who directly benefit from the recoveries made. Such findings of fact were not clearly erroneous.

The Creditors' Committee argues that the finding by the bankruptcy court that the agreement for additional fees entered into by the Bondholders and Ernst & Young is fairer and more equitable to all creditors than the agreement entered into by the Creditors' Committee and Houlihan Lokey, was unsupported by the record. The Creditors' Committee states that the Houlihan application was filed in the bankruptcy court on June 18, 2002, with all relevant terms relevant to the transaction fee disclosed and served on all parties, and any modifications to that agreement were

_____

[4] Whether the Bondholders end up paying seventy five percent of Houlihan Lokey's fees or some smaller amount does not change the fact that if Houlihan Lokey's transaction fee was paid out of the estate as an administrative expense, then the Bondholders would bear a meaningful portion of the expense in addition to paying its consultant.

reported to all parties. In contrast, the Creditors' Committee states, when the Bondholders' Committee filed its application to employ Ernst & Young on July 12, 2002, all of the

terms of the success fee component of their compensation were not disclosed to the court or made part of the public record. Thus, the Creditors' Committee reasons, the bankruptcy court's factual findings were clearly erroneous because it could not have made a valid determination as to which professional's agreement was more fair and equitable to the creditors of the debtors' estate. We disagree.

The bankruptcy court's decision regarding the Houlihan Lokey transaction fee was not governed by the agreement between the Bondholders and Ernst & Young. The bankruptcy court even stated in its memorandum order that just because the Bondholders made a particular arrangement with their financial advisor, does not mean that the same agreement should be imposed on the financial advisors hired by other constituencies. However, we see no error in the bankruptcy court considering it as a factor in its determination.

Finally, the Creditors' Committee argues that payment of the transaction fee from the general unsecured creditors' recovery constitutes a surcharge in violation of 11 U.S.C. § 506(c). We disagree.

## CONCLUSION

Because the bankruptcy court did not abuse its discretion when it held that the transaction fees of Houlihan Lokey should be paid from any distributions made to the unsecured creditors, we affirm.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.