### In re PRESIDENT CASINOS, INC., et al., Debtors.

### President Casinos, Inc., President Riverboat Casino–Missouri, Inc.

### No. 02–53005–172.

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Sept. 14, 2004.

Leonora S. Long, St. Louis, MO, Office of the United States Trustee.

David A. Warfield, Blackwell Sanders Peper Martin LLP, St. Louis, MO, for Unsecured Creditors Committee.

### ORDER ON BREAKUP FEES

JAMES J. BARTA, Chief Judge.

This matter concerns the motion of President Casinos, Inc. ("PCI") and President Riverboat Casino–Missouri, Inc. ("PRC–MO") (collectively, "Debtors") styled, "Motion For Orders (A) Authorizing Sale Of Assets Free And Clear Of All Liens, Claims, And Encumbrancers, Subject To Higher And Better Offers, (B) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, (C) Establishing Sale And Bidding Procedures, And (D) Approv-

ing Break–Up Compensation And Expense Reimbursement". After notice, one written objection was filed on behalf of Pinnacle Entertainment, Inc. ("Pinnacle"). The Court considered oral arguments at a hearing on September 8, 2004 and announced its determinations and orders from the bench.

This is a core proceeding pursuant to Section 157(b)(2)(A) and (O) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334, and Rule 81–9.01 of the Local Rules of the United States District Court for the Eastern District of Missouri.

The requests in the Debtors' motion are interrelated and were therefore properly submitted in a single pleading. As a result of these proceedings, the Court will address the request for break-up compensation in this Order, and address the remaining requests in a separate Order.

Initially it is important to note that the Court is not being asked to approve the sale of specific assets to a specific purchaser at this time. The Debtors and the Official Creditors' Committee have entered into a Sale and Purchase Agreement ("Agreement") to sell Closing Shares and certain Trademarks to Penn National Gaming, Inc. ("Penn"), subject to certain conditions including the possibility of higher and better offers. The matter being considered here concerns the Debtors' requests for authorization to sell certain assets, approval of the bid procedures in connection with the sale, approval of the assumption and assignment of certain executory contracts, and approval of a break-up fee.

The break-up fee is included as a provision in the Agreement whereby the Debtor will pay compensation to Penn in the event that, (a) the Court approves a higher and better offer from another party, and the sale successfully closes; or, (b) a competing plan of reorganization for PRC–MO containing terms inconsistent with the Sale and Purchase Agreement is confirmed and goes effective. The break-up fee includes compensation equal to $750,000.00, plus reimbursement of reasonable attorneys fees, expenses and third party costs up to $250,000.00. No party objected to the allowance or the amount of the break-up compensation.

■ A break-up fee has been defined as a "fee paid by a seller to a prospective purchaser in the event that the contemplated transaction is not consummated". *In re Tama Beef Packing, Inc. (AgriProcessors, Inc. v. Iowa Quality Beef Supply Network, L.L.C.)*, 290 B.R. 90, 96 (8th Cir. BAP 2003) (citing in agreement) *In re O'Brien Environmental Energy, Inc. (Calpine Corporation v. O'Brien Environmental Energy, Inc.)*, 181 F.3d 527, 535 (3rd Cir.1999).

■ When present in a Bankruptcy case a break-up fee is generally not a prepetition debt of a debtor. To the extent that it can be shown that the break-up fee was actually necessary to preserve the value of the estate, a prospective purchaser may be allowed a claim for administrative expenses under 11 U.S.C. 503(b)(1)(A). Such a fee can be paid by a debtor from a Bankruptcy estate to the holder of such an allowed claim against the estate. See *O'Brien*, 181 F.3d at 535.

It may be argued further that, in the proper circumstances, an unsuccessful "stalking horse" bidder should be entitled to something more than reimbursement of actual costs and expenses that resulted in a demonstrable benefit to the estate. For example, courts have discussed a "topping fee". See *In re APP Plus, Inc.*, 223 B.R. 870, 875 (Bankr.E.D.N.Y.1998); and "last look" procedures *In re Wintz Companies*

*(George Wintz v. American Freightways, Inc., and Charles W. Ries, Trustee,)*, 230 B.R. 840, 845 (8th Cir. BAP 1999).

■ A break-up fee that is greater than the actual cost and expenses of the prospective purchaser should constitute a fair and reasonable percentage of the proposed purchase price, and should be reasonably related to the risk, effort, and expenses of the prospective purchaser. *In re Integrated Resources, Inc.*, 147 B.R. 650, 662 (S.D.N.Y.1992) *appeal dismissed (In re Integrated Resources, Inc. (Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.)*, 3 F.3d 49 (2nd Cir.1993)).

■ In the matter being considered here, the Sale and Purchase Agreement, the proposed Bidding Procedures and other documents related to the sale contain several contingencies and alternatives, some of which will be controlled by events outside the Bankruptcy case. As a result, the record available at this time does not support a determination that approval of a break-up fee in the amount of $750,000.00 over the amount of $250,000.00 for costs and expenses incurred will enhance the bidding process. The Court finds and concludes that the amount of $250,000.00 is reasonable based upon the description of Penn's costs and expenses, and will be allowed as an administrative expense should the break-up fee be triggered. However, until the sale process is concluded, the Court is unable to determine that an additional break-up fee amount will benefit the estate in a demonstrable way. *Tama Beef Packing, Inc.*, 290 B.R. at 97.

The record has indicated that this process was not a situation where only one entity had expressed an interest in acquiring some or all of the Debtors' assets. In its objection here, Pinnacle has argued that it had been negotiating with the Debtors and the Official Committee for the purchase of estate property at about the same time that Penn had been conducting its negotiations.

At least one Court has stated that the business judgment of a debtor is the standard to be applied in the consideration of a break-up fee agreement. *In re Integrated Resources, Inc.*, 135 B.R. 746, 753 (Bankr. S.D.N.Y.1992). "Likewise, it is not the function of judges to determine the medieval just break-up fee". 147 B.R. at 660.

■ While not disregarding the importance of a debtor's business judgment, the applicable law in this Circuit requires that the determination of whether break-up fees or expenses are allowable as administrative expenses in a bankruptcy case will be made in reference to general administrative expense jurisprudence. *Tama Beef Packing, Inc.*, 290 B.R. at 97.

In summary, the Court is unable to find and conclude at this time that the break-up fee that is greater than the actual costs and expenses has or will provide some benefit to the Debtors' estate.

**IT IS ORDERED** that this matter is concluded; and the motion to approve a break-up fee is granted in part as set out here; and that a break-up fee in the amount of $250,000.00 is allowed as part of the Purchase and Sale Agreement with Penn National Gaming, Inc. as described in the motion and related documents as an expense of administration under 11 U.S.C. § 503(b)(1)(A); and

That so much of the motion that requests approval of a break-up fee in the additional amount of $750,000.00 is denied without prejudice; and that the remaining requests in this motion be set out in a separate Order.

**IT IS FURTHER ORDERED** that the Debtors are to mail a copy of this Order to all interested parties and thereafter file a

certification of such mailing with the Clerk of the United States Bankruptcy Court.